(No. 26226.—

GEORGE EDWARDS, Appellee, *vs.* HILL-THOMAS LIME & CEMENT COMPANY, Appellant.

*Opinion filed November 18, 1941.*

FARTHING, J., dissenting.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, for appellant.

GEERS & GOODMAN, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal allowed by this court from a judgment of the Appellate Court for the Fourth District affirming a judgment of the city court of East St. Louis, in favor of appellee and against appellant.

The case grows out of an accident which occurred at the intersection of State street with Sixty-first street in the city of East St. Louis. State street runs approximately east and west and is intersected by Sixty-first street which runs approximately north and south. Sixty-first street, as it extends north from State street, is slightly farther east than Sixty-first street extending south from State street. At the time of the accident State street was 60 feet in width. It was improved with an 18-foot concrete slab on either side and a 24-foot cindered strip between the concrete slabs. The north two traffic lanes were used by west-bound traffic. The south two traffic lanes were used by east-bound traffic. At the time in question, appellee was driving a two-ton moving van in an easterly direction on the south side of State street. He intended to turn north on Sixty-first street at the intersection. As he approached the intersection of Sixty-first street he pulled into the cindered center between the two pavement slabs. There is a sharp conflict in the testimony as to the facts surrounding the accident. Appellee's contention is that as he approached the intersection of State and Sixty-first streets from the west he drove his truck over into the cindered portion of the street in such manner that it was headed practically toward the northeast corner of the intersection; that a Ford automobile was approaching from the east and behind the automobile was the truck of appellant, also traveling west; that he waited until the automobile passed the intersection and then proceeded to drive upon and across the west-bound traffic lanes on the north side of State street for the purpose of entering Sixty-first street, and that he slowed down his truck until the automobile passed. Appellee testified that at that time appellant's truck was 250 to 300 feet east of the intersection. Another witness, who was riding with appellee in the cab of his truck at the time, testified that it was 150 feet east of the intersection. Appellee's further contention is that the speed

of the truck was not reduced and that it was driven into his moving van before he could cross over the west-bound traffic lanes on State street. Appellee and his companion in the cab of the moving van both testified that appellant's truck struck the right-hand side of the moving van near the center of the body. These witnesses were corroborated to some considerable extent by a disinterested witness who was standing on the southwest corner of the intersection at the time of the accident.

Appellant's contention is that appellee abruptly turned and drove through the west-bound traffic on State street; that he first struck the Ford automobile that was proceeding west on the north side of State street, in front of appellant's truck, damaged the rear fender of that car, and then veered into and struck appellant's truck. This was the testimony of the truck driver. This witness was substantially corroborated by the testimony of three disinterested witnesses, two of whom were occupants of the automobile which was immediately in front of appellant's truck and another witness who was driving east on State street, following appellee's moving van, as appellee turned left into the intersection.

In view of this sharp conflict in the testimony of the parties involved in the accident, and the testimony of disinterested witnesses tending to corroborate each, and the jury having returned a verdict in favor of the appellee which has been affirmed by the Appellate Court, we cannot say, as a matter of law, that there was not sufficient evidence to support the finding and judgment.

The above reference to the conflicting testimony, and the respective theories and contentions of the parties on the record, demonstrates that the case was close on the facts and was one which the jury might have decided either way. In this situation it is important that the record be free from errors of law, which may have affected the result.

The first error of law urged concerns questions asked the jurors on their *voir dire* examination. The record shows that before the selection of jurors began, counsel for appellee asked permission of the court to propound to the jurors on their *voir dire* examination, certain questions as to whether they were interested financially in the insurance company which admittedly had the coverage and was handling the defense of the case. In response to this request made in chambers, and out of the presence of the jury, counsel for appellant stated under oath, in substance, that the insurance company involved had no officers or stockholders in East St. Louis, St. Clair county, Illinois; that said company did have soliciting agents in East St. Louis, none of whom were on the panel of jurors then in attendance upon the court; that while said insurance company might have policyholders in East St. Louis, any judgment in this case could not affect the policyholders because the company was an "Old Line Company" and its policyholders were not liable for assessments to pay judgments. In response to this statement, counsel for appellee contended that appellee was entitled to interrogate the jurors and have their answers in response to the question of whether the jurors, or any of their relatives, owned stock in the insurance company. The trial court ruled this question was proper.

During the examination of jurors counsel for appellee propounded to the first panel of four jurors the following question: "Do you own any stock, or is any member of your family employed by the Massachusetts Bonding & Insurance Company?" To the second panel of four jurors he propounded the question: "Do any of you own any stock, or are you employed, or have you been employed, or are any close relatives employed in the Massachusetts Bonding & Insurance Company?" To the final panel of four jurors the following question was propounded: "Do any of you gentlemen own any stock, or are you employed

by, or do you have any close relatives employed by the Massachusetts Bonding & Insurance Company?" To each of these questions a general objection was made and overruled. It is insisted that this was error.

No affidavit was filed by counsel for appellee, and no showing was made giving any reason why it was necessary to ask the questions proposed. The record indicates that he simply made the request, orally, before the judge in chambers. The only reasons given were that the insurance company was conducting the defense and was liable for any judgment that might be rendered against the defendant, and that he desired to ask the questions for the purpose of exercising his right to challenge, if any members of the jury had any financial interest in the insurance company, or if their close relatives had any such interest.

While there is nothing in the record to show the request was not made in good faith, the record is equally barren of any fact which tends to show that it was so made. The grounds stated by counsel as reasons for asking the questions were wholly insufficient. Likewise, the facts stated by counsel for appellant, under oath, for the purpose of obviating the supposed necessity for the questions, were insufficient for that purpose, if the grounds upon which the request was made had been sufficient.

Prior to the decision of this court in *Smithers* v. *Henriquez*, 368 Ill. 588, the question of the right to bring the name of a defending insurance company into cases in this manner was the subject of much controversy. In that case the question was fully considered. It was held that where some grounds were shown upon which to base a reasonable belief that it was necessary to interrogate jurors as to their financial interest, if any, in the defending insurance company, and where the application to do so was made in good faith, such practice would not alone constitute reversible error, particularly where it was reasonably apparent from the record that the amount of the verdict had

not been influenced thereby. While the record in this case does not show that the request for leave to ask the questions in the examination of the jurors was not made in good faith, there was no basis shown upon which the request could reasonably be granted by the trial court. It is apparent under the showing made in this case that the real purpose which counsel had in mind was to advise the jury that the insurance company was making the defense and was liable for the payment of any judgment rendered.

In *Mithen* v. *Jeffery,* 259 Ill. 372, it was said: "It is not proper for an attorney to directly inform a jury that a defendant is insured against liability in the suit on trial, and, of course, the attorney cannot be permitted to accomplish the same result indirectly in the examination of jurors. It is the right of an attorney to ascertain whether a juror has any interest in or relation to claims or suits of the same character as the one being tried, for the purpose of exercising the right of peremptory challenge, (*Iroquois Furnace Co.* v. *McCrea,* 191 Ill. 340), but that can be readily done by an examination which would not lead the jury to understand that the defendant is insured against liability and is without substantial interest in the question of damages." This rule was quoted and reaffirmed in *Smithers* v. *Henriquez, supra.* The responsibility is upon the trial court to see that this practice is not abused and only permitted in cases where the request is made, upon a showing of proper grounds and within the rules announced by this court. In this case, as we have already pointed out, there was a sharp conflict in the evidence on the question of liability. While the amount of damages awarded by the jury might be sustained upon the evidence so that it could not be said that the damages awarded were excessive, we cannot say that the jury was not improperly influenced on the question of liability. The record shows that on a former trial the jury disagreed, evidently on the question of the liability of the defendant. The jury may have been

influenced in returning a verdict against the defendant because it was, in this manner, improperly informed that the insurance company was making the defense and would be liable for any judgment rendered.

In this case, because of other errors in the record, it is not necessary for us to determine whether this error, alone, would be sufficient to require us to reverse the judgment. We have set out somewhat in detail the facts surrounding the examination of the jurors and we disapprove the practice followed and admonish trial courts that such an examination of jurors should only be permitted, strictly for the purposes, and upon a proper showing, as pointed out in the decisions of this court. The rule should not be extended, but in all cases should be carefully adhered to and followed. This is a responsibility conducive to a fair and impartial administration of justice, and one which the trial courts should not overlook or disregard.

Appellant complains of instructions Nos. 1 and 2 given on behalf of appellee, and asserts that the trial court erroneously refused to give instruction No. 6, offered by appellant.

The rule is well settled that where a case is close on the facts, and its decision depends and must be determined upon conflicting testimony, the jury should be accurately instructed.

Instruction No. 1, given on behalf of appellee, is as follows: "As to the issue of contributory negligence on the part of plaintiff, if any, you are instructed that plaintiff was not required to exercise the highest degree of care for his own safety, as the law required of him but to exercise ordinary care by which is meant that degree of care and caution which a reasonably careful and prudent person would have exercised under the same or like circumstances, and in the situation in which plaintiff was placed as shown by the evidence." It will be noted that this instruction on the subject of contributory negligence tells the jury, in

effect, that all the law required of the appellee was that degree of care and caution which a reasonably careful and prudent person would have exercised, "in the situation in which" appellee was placed. The instruction entirely ignores the question of whether the appellee was guilty of contributory negligence in placing himself in that situation. Similar instructions have been repeatedly condemned by this court. In the case of *North Chicago Street Railroad Co.* v. *Cossar,* 203 Ill. 608, an instruction was given which, in substance, was the same as the above instruction. This court, in commenting upon the instruction, made the following observations: "The criticism made upon this instruction is, that it assumes that an ordinarily prudent and cautious person might find himself in the situation that plaintiff was in at the time of the accident, and assumes that she was not guilty of contributory negligence in being in the position in which she found herself at the time of the injury. In personal injury cases it has been repeatedly held by this court that it is improper to give an instruction which limits the question of due care to the conduct of the plaintiff at the time of the injury, regardless of his conduct in placing himself in the place of danger. * * * We think this instruction subject to the criticism made, and that the jury might well have inferred therefrom that if the plaintiff was in the exercise of due care at the instant when the accident occurred, then she might recover, although the evidence showed she was guilty of negligence in having placed herself in the position in which she found herself at the time of the collision."

The criticism of the instruction in that case applies equally to the instruction in this case. It was appellee's contention that after he had stopped his truck in the cindered center portion of State street he started to drive across the 18-foot pavement slab on the north side of State street, headed north; that he was first compelled to slow down to permit the Ford automobile to pass the intersec-

tion; that he then increased the speed of his moving van and about the time he reached the north line of State street, entering north Sixty-first street, a pedestrian walked in front of him compelling him to slow down again and that this prevented him from getting out of the way of the approaching truck of appellant. Under this instruction the jury would have been warranted in finding that appellee was not guilty of contributory negligence merely because of his inability to cross the pavement slab on the north side of State street in time to avoid being struck by appellant's truck, approaching from the east. The language of the instruction disregarded entirely the question of whether appellee was guilty of contributory negligence in attempting to drive through traffic moving west on the north side of State street. The above rule announced in *North Chicago Street Railroad Co.* v. *Cossar, supra,* has been announced and followed in other cases. (*Chicago City Railway Co.* v. *O'Donnell,* 208 Ill. 267; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Halsey,* 133 id. 248; *Illinois Central Railroad Co.* v. *Weldon,* 52 id. 290.) Instruction No. 1, given on behalf of appellee, was erroneous for the reasons above pointed out.

Appellant also objects to instruction No. 2 given to the jury on behalf of appellee. This instruction was on the subject of the measure of damages. It is subject to the criticism made against it by appellant that it did not limit the damages to those proved by the preponderance of the evidence. The instruction was erroneous in this respect, but if that was the only error in the case it would not warrant a reversal.

Appellant also complains of the refusal of the court to give an instruction requested by it in the following language: "The court instructs the jury that if you believe from the evidence in this case that the injuries which the plaintiff received, if any, were occasioned to him on account of his own negligence in turning to the left in attempting

to drive through regular traffic on State street and without his waiting to ascertain that he had an opportunity of making said left turn safely, then the plaintiff would not be entitled to recover and you should find the issues in favor of the defendant." This instruction stated a correct rule of law and it should have been given. It was not covered by any other instruction given, and the refusal of the court to give this instruction constituted error.

For the reasons herein set forth, the judgment of the Appellate Court for the Fourth District is reversed and the cause remanded to the city court of East St. Louis for a new trial.

*Reversed and remanded.*

Mr. JUSTICE FARTHING, dissenting.