(No. 27116.—)

Russell S. Moore, Appellee, *vs.* William L. Edmonds *et al.*, Appellants.

*Opinion filed Sept. 24, 1943—Rehearing denied Nov. 19, 1943.*

EKERN, MEYERS & MATTHIAS, (WALTER F. DODD, DONALD L. THOMPSON, and WILLIAM G. CHORN, of counsel,) for appellants.

GARDNER, CARTON & DOUGLAS, (ERWIN W. ROEMER, and JAMES A. VELDE, of counsel,) for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Prior to and on December 29, 1938, William L. Edmonds, Lawrence J. Kollath, and Dudley L. Dewey, partners, doing business under the firm name and style of

Touhy Playfield Winter Sports Company, operated a public toboggan slide at 3131 Touhy avenue, Chicago. The slide consisted of a tower from which runways ran to the ground. Approximately 720 feet from the top of the tower a ditch six to eight feet wide and from twelve to fifteen inches deep traversed the runways at right angles. On the evening of December 29, Moore, accompanied by his young daughter and two of her friends, used his own toboggan on the slide. At the ditch he sustained admittedly serious injuries. Thereafter, the plaintiff, Moore, filed his complaint in the superior court of Cook county against Edmonds, Kollath, Dewey, Kellogg Huntington and the Illinois Brick Company, seeking to recover damages for the personal injuries suffered. The cause was dismissed as to Huntington and the corporation. A jury returned a verdict of $12,500 in favor of plaintiff and against Edmonds, Kollath and Dewey, hereafter referred to as the defendants. Upon appeal, the Appellate Court for the First District affirmed the judgment. (*Moore* v. *Edmonds,* 316 Ill. App. 453.) We have granted defendants' petition for leave to appeal.

The principal question presented for decision is the propriety of certain questions asked the jurors on their *voir dire* examination. Prior to the interrogation of the prospective jurors, plaintiff filed an affidavit alleging on information and belief that the defendants carried public-liability insurance with the Underwriters at Lloyds of London against risks identical with the one charged in the complaint; that the action had been and was being defended by the insurer; that the attorneys of record for defendants were local counsel for the insurance Underwriters and were, in fact, representing the Underwriters rather than the defendants in this cause; that the Underwriters were vitally interested in the litigation and would, in the event judgment be rendered against defendants, pay the judgment up to the limits of the liability of the

policy. Concluding, plaintiff declared that his interests would be prejudiced unless his counsel be allowed "to inquire of prospective jurors on their *voir dire* as to their financial interest, if any, in the said insurance Underwriters, for the reason that your affiant is informed and believes, and upon such information and belief states the fact to be that the said Underwriters at Lloyds of London has a number of employees in Cook county, and there are others in Cook county financially interested in said company." Defendants' attorney interposed a motion, supported by his affidavit, to restrain the interrogation of the jurors requested by plaintiff. It was averred that plaintiff had not shown any financial interest, connection or affiliation of the jurors with the Underwriters at Lloyds of London and, on the contrary, that none of the jurors could possibly have a financial interest with the insurer. The motion continued: "These defendants further move that before the plaintiff by his counsel be allowed to interrogate the jurors or any of them on *voir dire* examination, that the said attorney representing the said plaintiff be ordered to interrogate each and all of the said jurors concerning their residence, employment and occupation before being allowed to interrogate the jurors collectively on the *voir dire* examination concerning financial interest, connection or affiliation with the said Underwriters at Lloyds. That the plaintiff first be ordered to determine whether any of the jurors individually are connected with any company or association and the kind and nature of business of the said company, corporation or association; that the plaintiff be required to obtain this information before inquiring of the said jurors whether or not they are connected or affiliated or interested in any corporation or association engaged in the insurance business." The affidavit of defendants' attorney admitted that defendants carried insurance issued by certain individuals who were members of the Underwriters at Lloyds of London,

the maximum liability upon the insurance contract being $20,000. The organization of the Underwriters was set forth in considerable detail. Averments were made that insurance is sold in Chicago and Cook county through "certain authorized and designated agents;" that the Underwriters, and particularly the Underwriters on defendants' insurance policy, have employed agents, investigators and attorneys in and about their several contracts of insurance; that each contract between the particular Underwriters thereon and the particular assured, is a separate and independent contract, and, accordingly, that each of the investigators, agents and attorneys is employed on particular policies and claims and has no interest in any other policy except as employments are made. The affidavit gave the name of the agent writing the insurance of the defendants, R. N. Crawford & Company, the name of the investigators, Toplis & Harding, the name of the law firm retained to defend the claim, Ekern & Meyers, adding that none of the officers, agents or employees of R. N. Crawford & Company, Toplis & Harding, or Ekern & Meyers was on the jury panel and, further, that no other agent, investigator or attorney for any of the Underwriters at Lloyds had any financial interest in the outcome of the litigation. Concluding averments expressed the opinion that plaintiffs' affidavit for permission to question the jurors as to their financial interest in the Underwriters at Lloyds was not made in good faith but that its sole purpose was, instead, to apprise the jurors of insurance coverage on the accident in controversy.

Before the examination of the jurors, a colloquy ensued between the trial judge and the attorneys for the parties. Discussion developed relative to interrogating the jurors about friends or relatives who might have an interest in insurance companies, defendants' attorney asserting, "Relatives don't have anything to do with it." The trial judge directed plaintiff's attorney to first ask the jurors about

their occupation, pointing out that if the jurors appeared acceptable, counsel would then have "a right to ask them as to their friends, relatives and associates, with reference to any insurance company." The four jurors on the first panel were asked, collectively, the question: "Have you ever had any connection at all with any company that makes a practice of defending cases of this kind, or do you have any financial interest in such a company as that? Do you have any close friends or relatives associated with a company of that kind? Upon receiving their negative replies, counsel then asked, "Do any of you have any connection with the Underwriters, Lloyds of London?" Again, the replies were in the negative. One of the first four jurors was excused by defendants' counsel. Substantially the same questions were then propounded to a new juror. A second panel was examined in the same manner as the first. Three jurors on the second panel were excused and, when others were found acceptable by defendants' counsel, they were asked the questions which defendants assail. Plaintiff's counsel next examined a third panel of jurors. One was excused by defendants and his successor was asked the controverted questions. The questions were necessarily repeated owing to the examination of the jurors in panels. Also, repetition was required when the questions were asked the jurors who replaced those excused. In this manner, the questions were asked six times. Recourse to the record discloses that altogether approximately 450 questions were asked the jurors, about 200 by plaintiff's counsel and the remainder by defendants' attorney.

Defendants' position is that the interrogation recounted constituted reversible error, the contention being made that the specific questions regarding Lloyds of London, together with the general questions concerning the jurors' connection with or financial interest in companies defending personal injury cases were unnecessary to plaintiff's protection and, conversely, merely prejudicial to his adversaries.

On the other hand, plaintiff maintains that the trial judge did not abuse his descretionary power of supervision of the *voir dire* examination of the jurors; that the purpose in asking the questions was to obtain information in good faith for the possible exercise of peremptory challenges and that, since the evidence clearly established defendants' liability, the questions were not and could not have been prejudicial.

The question with respect to when an inquiry as to jurors' interest in an insurance company is prejudicial to defendant has been the subject of frequent and extended consideration by this court and the courts of other jurisdictions. Judicial opinion almost universally recognizes the right of the plaintiff in good faith to interrogate the jurors on their *voir dire* examination as to their, or their relatives', possible connection with, or interest in, liability insurance companies, in order to determine the expediency of exercising his right to peremptory challenge to the end of obtaining a jury free from bias and prejudice, even though such inquiries may develop a suspicion in the minds of the jury that defendant is protected by insurance. (105 A. L. R. 1330; 95 A. L. R. 404; 74 A. L. R. 860; 76 A. L. R. 1454, and cases cited.) Ever present is the problem of balancing the opposing rights of the parties. First, each party enjoys the right to make inquiries of jurors in order to intelligently exercise his right of challenge. The opponent, at the same time, requires protection, even in the *voir dire* examination, from any irrelevant matter likely to be prejudicial. Questions may, of course, be asked for the purpose of exercising peremptory challenges, as well as challenges for cause. (*O'Hare* v. *Chicago Madison and Northern Railroad Co.* 139 Ill. 151.) The purpose of the examination, it has been said, is to determine whether a juror "possesses the necessary qualifications, whether he has prejudged the case, whether his mind is free from prejudice or bias, * * *." (*Lavin* v. *People,* 69 Ill. 303.)

In *Smithers* v. *Henriquez,* 368 Ill. 588, we said: "Under his duty as a lawyer and to his client, plaintiff's counsel was required to exercise all lawful means known to him to see that no interested party sat as a juror in the case." As recently observed, "It is of course counsel's duty to protect his client against prejudice by the reasonable ascertainment of such information as would permit him to intelligently exercise his right of peremptory challenge, but the right goes no further." (*Kavanaugh* v. *Parret,* 379 Ill. 273.) In the exercise of a sound judicial discretion, the trial judge may limit the examination for the reason that its scope necessarily varies with different fact situations. *St. Clair Housing Authority* v. *Quirin,* 379 Ill. 52; *Donovan* v. *People,* 139 Ill. 412.

Recognition has been accorded the fact that public liability insurance is commonly carried by persons whose business or property holdings create a probability of injury to the general public and, further, that numerous liability insurance companies are engaged in business in metropolitan centers such as Chicago. (*Smithers* v. *Henriquez,* 368 Ill. 588.) Owing to these conditions, the duty devolves upon plaintiff's counsel to see that persons antagonistic to the payment of claims similar to the one presented here do not serve as jurors. Among them are persons having insurance company connections, namely, (1) shareholders of the company defending the action or of like companies, (2) those engaged as employees of the company or other insurance companies, and (3) friends and relatives of agents or investigators. The duty of defendants' counsel is to prevent, so far as is possible, jurors from learning that his client is insured against liability and, in the event of an adverse judgment, will not have to satisfy it in whole or in part. In an attempt to resolve these conflicting interests, questions relating to prospective jurors' interest in, or connection with, liability insurance companies must be asked in good faith

and not merely for the purpose of bringing home to the jurors the fact that a defendant is insured. As pointedly observed in *Beasley* v. *Pond*, 173 Okla. 355: "Many courts permit counsel to inquire as to whether the juror is interested in the particular insurance company involved in the case, so long as no mention is made that the defendant actually carries insurance. In permitting this practice, the courts proceed on the theory that if such, questioning be interpreted by the jury as an inference that an insurance company is back of the defendant, thus invading the defendant's rights, nevertheless the plaintiff has the equally important right to elicit from the prospective jurors sufficient information that he may intelligently exercise his right of challenge. It is well known that plaintiffs rightfully object to juries composed of men who by the very nature of their business adopt an attitude of mind antagonistic to the payment of such claims as plaintiff is at the time presenting in court. Since perfection is often impossible, the conjecture that defendant may be improperly prejudiced by such *voir dire* examination is looked upon as merely an unfortunate possibility which notwithstanding, is not·permitted to override the valuable right of plaintiff to try his case before disinterested parties—a choice of the lesser· of two evils. * * * The theory is, of course, that the plaintiff is entitled to know the relationship between any juror and the party really in interest or in the same class, though not appearing of record, so that he may use the information thus obtained as a guide for the exercising of his challenges."

Particularly pertinent, also, is the language of the Ohio Supreme Court in *Dowd-Feder, Inc.* v. *Truesdell*, 130 Ohio St. 530: "In view of the fact that neither litigant nor counsel can know personally every prospective juror, inquiry into a juror's possible connection with, or interest in, casualty insurance companies is obviously necessary in order that his cause shall not be tried by a jury whose

views in such cases are colored by their investments, income, or other prejudicial interests. While a juror's interest in or connections with a casualty insurance company do not *ipso facto* disqualify him as a juror, yet it must be admitted that there is the possibility of a disposition on the part of some such persons to be defense-minded."

Earlier Illinois authorities are exhaustively reviewed in *Smithers* v. *Henriquez*, 368 Ill. 588. There, the precise issue decided was whether inquiries to prospective jurors upon their *voir dire* examination, apparently in good faith, with the object of eliminating interested parties from the jury, were so prejudicial as to require a reversal. In particular, counsel was permitted to ask if any juror was interested in a named insurance company defending the action. In summary, we said, "to require a reversal, the examination must be such as to show a prejudice to the rights of the defendant. It is to be remembered that plaintiff's right to an impartial disinterested jury is equal to that of the defendant to have an examination of the jury free from prejudice to his interests. There can be no difference in a court of justice between the rights of litigants to a fair trial, and, if before a jury, that it be impartial and unbiased." The questions were held proper under the factual situation presented. In *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180, without determining whether the error was sufficient to require a reversal of the judgment, we decided that the circumstances attending the questions relating to the jurors' interest in an insurance company did not satisfy the requirements announced in *Smithers* v. *Henriquez,* 368 Ill. 588. Similarly, the questions propounded in *Kavanaugh* v. *Parret,* 379 Ill. 273, where the evidence as to the automobile collision was in sharp dispute, were held to be prejudicial. Neither of these two later decisions departs from or even purports to abrogate *Smithers* v. *Henriquez,* 368 Ill. 588. Here, the precise question presented is, consequently, whether the

record discloses that the inquiries assailed were made in good faith for the purpose of obtaining a legitimate basis for exercising plaintiff's right of peremptory challenge, or, instead, primarily to advise the jurors that defendants were covered by liability insurance.

Defendants do not urge bad faith by plaintiff's counsel in asking the questions. The Appellate Court says: "Here the good faith of plaintiff's counsel is evident. * * *" From the affidavit of defendants' attorney, it appears that defendants were insured by the Underwriters at Lloyds of London for $20,000; that the Underwriters employed agents and investigators in Cook county to represent them on various policies; that the local agency firm had twenty-eight employees and the investigating firm sixty-five, and that no one of these employees on defendants' policy was on the jury. The affidavit did not foreclose the possibility of other agents or investigators or their employees or other employees of the Underwriters being on the jury panel. Indeed, in *O'Neal* v. *Caffarello,* 303 Ill. App. 574, where a counteraffidavit was filed, as here, the *voir dire* examination concerning the jurors' connection with the Underwriters at Lloyds of London disclosed a prospective juror who wrote insurance for Lloyds. He was excused forthwith. In the light of the situation developed in the *O'Neal case,* counsel would have been derelict in his duty to plaintiff had he not attempted to ascertain whether the same situation obtained in this case. A second possibility left open by defendants' affidavit was that close relatives or friends of the agents and investigators on defendants' policy may have been on the jury panel. Again, former employees of the agency or investigating firm on this policy may have been prospective jurors. Further, the affidavits did not preclude the possible presence on the jury panel of full or part-time agents or close friends or relatives of such agents who were engaged in other types of insurance business for Lloyds of London. Without exploring

further possibilities, the foregoing suffice to demonstrate abundant reason for seeking the connection of prospective jurors with, and financial interest in, the Underwriters at Lloyds of London in the present case. Furthermore, the motion of defendants' attorney warrants the construction that he suggested the procedure followed by plaintiff's counsel in asking the questions. The colloquy between the trial judge and the counsel tends to indicate that defendants' principal opposition was to an inquiry concerning relatives of the jurors. The form of question actually employed was suggested by the trial judge, and the general and specific questions were ordered pursuant to defendants' motion. It is patent that general questions restricted to the business or occupation of the jurors would fail to disclose the connection of a part-time agent or of a close relative or friend of an agent of Lloyds. Defendants admit that Lloyds of London had numerous agents and employees in Cook county but the affidavit of their attorney states only that the agents and employees involved in the particular policy issued to them were not on the panel of jurors. Manifestly, plaintiff's counsel was warranted in attempting to find out whether other agents or employees of the Underwriters were on the panel. Protection of his client against possible prejudice demanded such an inquiry, and the trial judge did not abuse his discretion in permitting the questions to be asked.

In this case, the extent of plaintiff's serious injuries is not disputed. Hospital and medical expenses exceeded $7000. It cannot be said the information acquired by the jurors to the effect that defendants carried liability insurance was prejudicial to defendants when the damages assessed, $12,500, were well below the limits of the policy, $20,000. This is particularly true since defendants do not contend that the verdict finding them guilty is against the manifest weight of the evidence, so far as their negligence is concerned, nor do they maintain that the amount of the

damages awarded was excessive. Moreover, the evidence disclosed that one of the defendants was engaged in the insurance business. The hazardous nature of defendants' business in maintaining a public toboggan slide was obvious. If the jurors reached the conclusion from the questions asked that defendants were insured,—and we think the inference fair despite the fact that use of the word "insurance" was consistently avoided in the questions attacked,— knowledge that one defendant was an insurance broker and that the three defendants were engaged in an extraordinarily hazardous business would undoubtedly have induced the same inference.

Reliance upon the following language employed in *Kavanaugh* v. *Parret,* 379 Ill. 273, cannot avail defendants: "It is improper to inform the jury, either directly or indirectly, that the defendant is insured against liability on a judgment that may be entered against him in the trial of the case." This quotation cannot be isolated from the context. Under the factual situation presented in the case cited the language was proper. It has no application to questions such as those employed in the case at bar, where the primary purpose of the examination was to aid counsel in the intelligent exercise of plaintiff's peremptory challenges. The record discloses good faith in seeking to ask the questions and, also, painstaking efforts by plaintiff's counsel, when permitted so to do, to interrogate the jurors in a manner eminently fair to defendants as well as to his own client. The procedure pursued by the trial court and plaintiff's counsel reflects a sincere attempt to follow the suggestions of this court in *Smithers* v. *Henriquez,* 368 Ill. 588, and demonstrates that counsel can accomplish the objective of preventing persons interested in the insurance carrier from serving as jurors by adhering to our admonitions in *Smithers* v. *Henriquez,* 368 Ill. 588, *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180, and *Kavanaugh* v. *Parret,* 379 Ill. 273.

Defendants contend further that prior to using their toboggan slide plaintiff released them from liability for any injuries he might sustain. This contention rests upon a portion of an instrument captioned a receipt. When plaintiff paid defendants' cashier fifty cents for the privilege of using his own toboggan on the slide an hour, she informed him that "he would have to sign up first before he could use the slide. He didn't say anything; he just signed. Mr. Moore was in the warming house just long enough to give me his name and to sign this ticket." The instrument, introduced in evidence, consists of two parts. Of these, the first, which was detached by the cashier and given to plaintiff, contains a number corresponding to the number of the signed portion, a list of the prices charged and the statement "6 of these receipts entitles you to one free hour." The part of the ticket signed by plaintiff and retained by the cashier gives the number of the card, the date, the toboggan number and the cost. Next appear these words in relatively small print: "I agree to return all equipment in the same condition as when received, ordinary wear and tear excepted, and do release Touhy Playfield Winter Sports Co. and employees from all liability for any and all injuries or damages, or both, it being my intention to assume all risk, which may be sustained, whether arising from the use of such equipment, or otherwise." Immediately below, in bold face type are the words "Return This Receipt." Then follows plaintiff's signature, his address and telephone number. Without narrating plaintiff's testimony in detail, it suffices to note that he testified no actual notice was given him of the language claimed by defendants to constitute a release. The testimony of defendants' cashier tends to substantiate plaintiff's version. She stated that when she gives a card to patrons she directs them to write their name and address and "if they ask me, then I tell them it is a release." There is no testi-

mony in the record to the effect that the cashier, or anyone else, directed plaintiff's attention specifically to the language upon which defendants now rely. Our attention is also directed to the fact that a sign, about thirty-eight and one-half by twenty-three inches in size, behind the counter on the wall of the warming room where the ticket was purchased contained these words: "Warning You Ride At Your Own Risk—Be Careful!" According to plaintiff, he did not see the sign. A woman patron the same evening testified that she failed to see the sign. Each of the three defendants testified to the presence of the sign as did three persons who were assisting defendants with the operation of the slide. A concession that plaintiff did see the sign would not relieve defendants from liability, but would merely amount to an assumption of risk of the known or ordinary dangers to be encountered. The question of whether the alleged release was obtained knowingly and fairly is a fact question to be decided by the jury. (*Chicago City Railway Co.* v. *Uhter,* 212 Ill. 174; *Indiana, Decatur and Western Railway Co.* v. *Fowler,* 201 Ill. 152; *National Syrup Co. v. Carlson,* 155 Ill. 210.) The jury's finding, approved by the trial judge and the Appellate Court, to the effect that the card containing the words relied upon as a release was deceptive in appearance and itself constituted a misrepresentation is not against the manifest weight of the evidence.

Strikingly similar in this respect is *Brennan* v. *Ocean View Amusement Co.* 289 Mass. 587. Brennan brought an action against the amusement company to recover damages for personal injuries sustained as a result of being thrown from a car on a roller coaster. Holding that the attempted limitation of liability printed on the ticket which plaintiff bought did not require a directed verdict for defendant, the Supreme Judicial Court of Massachusetts said: "We assume in favor of the defendant that, as it was not

bound to invite the plaintiff at all, it could impose conditions and limitations upon the invitation which it did in fact extend to him, and that he would be bound thereby, if they were brought to his attention in such a manner that a person of ordinary intelligence in his position would have known of and understood them. Otherwise he is entitled to all the rights which the law gives to a business visitor. The ticket had the appearance of a mere check or token rather than of a contract. Although the plaintiff knew there was printing upon the ticket, he did not read it, but put it in his pocket until it should be taken up at the end of the ride. The attempted limitation was not brought home to him in any other way. It was for the jury to say whether this was enough." In the present case, it is true that plaintiff knew there was printing on the ticket purchased but he did not read it and evidence is wanting that the attempted limitation of liability was brought home to him in this or any other way. At defendants' request, the jurors were instructed that if they believed from the evidence plaintiff "knowingly affixed his signature to the instrument here in question you have no other alternative in your verdict but to find the defendants not guilty." The jury's disbelief in this respect finds support in the evidence, and is not subject to further review by this court.

Complaint is made concerning an instruction advising the jurors that the signed "release" was not a bar to plaintiff's action if they believed the ticket was obtained by representations or acts of the defendants or their agents which induced in plaintiff's mind the belief that by filling in his name, address and telephone number he was merely registering in accordance with their request and not assuming any risk in connection with the toboggan slide or releasing any claim which he might later have for injuries sustained. The instruction assailed, in the light of the evidence adduced, was properly given. *Pioneer Cooperage*

*Co.* v. *Romanowicz,* 186 Ill. 9; *Chicago, Rock Island and Pacific Railway Co.* v. *Lewis,* 109 Ill. 120.

Defendants insist that plaintiff's contributory negligence relieved them from liability. This contention is predicated on plaintiff's use of his own toboggan with steel runners instead of one of defendants' toboggans equipped with wooden runners, steel runners being more hazardous than wooden runners. Although the testimony is conflicting as to whether defendants warned plaintiff that toboggans with steel runners could not be used, they permitted him to use his own toboggan and their employees assisted him preparatory to descending the slide. Even if defendants did warn plaintiff to not use his toboggan, the fact remains that they not only permitted him to do so despite their warning but neither warned him that the steel runners were dangerous because of the ditch nor even apprised him of its existence. Apart from the negligence of the proprietors of the slide and the contributory negligence of the patron being pre-eminently questions of fact (*Fishbaine* v. *White Star Line,* 224 Mich. 173,) decided in favor of plaintiff and against defendants, proof of contributory negligence could not avail defendants for the reason that the sole proximate cause of the accident and plaintiff's resultant injuries was the ditch and not the steel runners. *Lerette* v. *Director General of Railroads,* 306 Ill. 348.

The judgment of the Appellate Court is right, and it is affirmed.                            *Judgment affirmed.*

Mr. JUSTICE GUNN, specially concurring:

I concur in the result reached by the majority opinion in this case because the defendant's attorney invited the interrogation of jurors, now objected to, by suggesting that after they had been generally examined they could be collectively interrogated concerning financial interest, connection or affiliation with the Underwriters at Lloyds. In my opinion the court did not allow interrogation substan-

tially at variance with this suggestion of defendant's counsel, and hence he is in no position to raise the objection that such examination improperly disclosed that an insurance company was involved; and likewise it would negative the absence of good faith upon the part of plaintiff's attorney.

The majority opinion, however, is not based upon this proposition, but in my opinion extends the rule laid down in *Smithers* v. *Henriquez*, 368 Ill. 588, so that for practical purposes the door is now open for the plaintiff upon *voir dire* examination of jurors to fully disclose an insurance company's interest. And further, the range of questions permitted renders it impossible for a defendant by affidavit to show that no person connected with an insurance company has a direct interest in the result of the litigation.

In *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180, the cause was reversed and remanded because the interrogation concerned an insurance carrier of the defendant. No affidavit was filed by the plaintiff showing the necessity for such examination, but simply an oral request before the judge in chambers, and this was held to be insufficient to show such questions were made in good faith. In *Kavanaugh* v. *Parret*, 379 Ill. 273, the cause was reversed and remanded because the jurors were permitted to be interrogated concerning their interest in a certain insurance company. There was an affidavit filed in this case, but the counteraffidavit disclosed facts which showed the plaintiffs could not be prejudiced by a trial before the jurors then in court. It was said in that case the effect of the question was to advise the jury the insurance company was making the defense and was liable for the payment of any judgment rendered. In *St. Clair Housing Authority* v. *Quirin*, 379 Ill. 52, the cause was reversed and remanded because the questions asked upon examination of the jury conveyed information that the government was interested in the financing of a project, and therefore it would not cost the taxpayers.

These cases, with the *Smithers case,* point out the extent to which jurors may be examined upon the interest of an insurance company upon their *voir dire,* and how it may be avoided. If the plaintiff makes an affidavit showing that he has grounds to fear that there are persons about to be selected on the jury who are interested in an insurance company, this will permit reasonable examination to be made of them, without disclosing the name of the company, unless a counteraffidavit fully discloses that none of the persons on the jury have a direct financial interest in the result of the case.

The *Smithers case* lays down the rule that the plaintiff is entitled to see that no "interested party" sits as a juror in the case. The comment of the court in justifying questions asked in the present case does not base it upon the reasonable construction of the concession made by defendant's counsel, but lays down the general rule that, in addition to showing that a juror is not an interested party, the affidavit of the defendant must also show that no close friends or relatives of the agents or investigators of the insurance company, or former employees of the agency or investigating firm, or the issuer of the policy, or friends or relatives of agents who are engaged in other types of insurance for the same company protecting the defendant must be negatived; otherwise interrogatories may be asked concerning the same.

The establishment of this rule renders it impossible for a defendant to prevent the disclosure that he is protected by insurance, or the name of the insurance company insuring him, for it is impossible in large-sized communities for an affidavit to be made excluding all such classes of persons. None of such persons are interested parties within the meaning of the law. Such a rule throws an unjust burden upon a defendant, because in many instances an insurance company makes the defense under a nonwaiver agreement, by which it is at liberty to contest payment of the

award, because of breach of conditions in the policy; and in such case a defendant not only has the burden of establishing his defense on the merits, but also of overcoming any tendency upon the part of a jury to find against an insurance company.

In my opinion, the additional latitude permitted by this opinion in the examination of jurors is in direct conflict with the result reached in the *St. Clair Housing Authority case,* and *Kavanaugh* v. *Parret* and *Edwards* v. *Hill-Thomas Lime & Cement Co. cases.* The effect of the opinion is to extend the rule without having an issue in the case justifying such a conclusion, and a substantial extension of the law applicable to such cases is made without proper consideration of the decisions following *Smithers* v. *Henriquez,* 368 Ill. 588.

To extend the rule on such an important matter of trial practice in my judgment requires that the point be directly presented for consideration, and that the rule not be modified or extended by *dicta* which is unnecessary for a proper determination of the case. In my judgment the opinion goes far beyond anything heretofore announced by this court, and is in conflict with the decisions pointed out above. While I believe the result reached is correct, I think the language used in the opinion was wholly unnecessary and susceptible of being considered a deviation from our former rulings, and therefore I cannot concur in the reasons given for the affirmance of the judgment in this case.

Mr. CHIEF JUSTICE SMITH and Mr. JUSTICE STONE join in this special concurrence.