(No. 29624.—

EMMA WHEELER, Appellee, *vs.* ABRAHAM RUDEK, Appellant.

*Opinion filed March 19, 1947—Rehearing denied Sept. 16, 1947.*

WILSON and THOMPSON, JJ., dissenting.

CASSELS, POTTER & BENTLEY, and SAMUEL LEVIN, both of Chicago, (KENNETH B. HAWKINS, of counsel,) for appellant.

Louis G. Davidson, and Joseph D. Ryan, both of Chicago, for appellee.

Mr. Justice Murphy delivered the opinion of the court:

Plaintiff started this action in the superior court of Cook county to recover damages she sustained when the automobile she was driving collided with an automobile owned by defendant but driven by his servant Robert Lee. The accident occurred at the intersection of Ninetieth street and South Phillips avenue in Chicago. When the suit was started Lee was named as a defendant but later the action was dismissed as to him. Plaintiff and Lee were the only eyewitnesses to the accident. Other witnesses included police officers who testified to the damaged conditions of the automobiles and their location in the street after the collision. There was testimony as to the length and course of certain tire marks on the pavement. The difference in the version of the eyewitnesses as to the circumstances surrounding the accident presented contested questions of fact as to the speed of defendant's automobile as it approached the intersection and as to which automobile had the right of way across the intersection. The jury returned a verdict for plaintiff in the sum of $7500. The judgment entered thereon was affirmed by the Appellate Court. (328 Ill. App. 283.) We granted defendant's petition for leave to appeal. The errors relied on for reversal are that plaintiff was permitted to ask improper questions in the examination of jurors on their *voir dire* and that the charge of wilful and wanton negligence as laid in the second count of the complaint should not have been submitted to the jury.

Before starting the impaneling of a jury, a hearing was had out of the presence of the jury to determine whether plaintiff might interrogate the jurors on their *voir dire* as to their interest in, and relationship to, an insurance

company whose business was to insure against risks such as plaintiff's claim. During such hearing it was admitted defendant had a public liability policy with a limitation of $5000, issued by the Commercial Casualty Insurance Company. The court ruled such inquiry might be made, and approved the form and substance of the questions to be asked. They were as follows: "Have you ever had any interest in or been in any way affiliated with any company that makes a practice of investigating or defending cases of this kind, or do you have any financial interest in such a company as that?" Second question: "Do you have any close friends or relatives associated with a company of that kind or financially interested in such a company?" The questions were asked of panels of four and all answers were in the negative. Other questions propounded by plaintiff included inquiries as to the juror's residence and occupation, and, if the one being interrogated was a married woman, the inquiry extended to include the occupation and business of her husband. It developed in the examination of one woman juror that her husband had been in the employ of a life insurance company, and plaintiff challenged her peremptorily. Except for such information as might be imparted to the jurors by the two questions, there was nothing that occurred in the examination of the jurors or in the trial that would arouse any suspicion that defendant had public liability insurance.

Questions of similar import were considered by this court in *Smithers* v. *Henriquez*, 368 Ill. 588; *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180; *Kavanaugh* v. *Parret*, 379 Ill. 273, and *Moore* v. *Edmonds*, 384 Ill. 535. These cases are cited by both parties and their arguments indicate that they hold widely different views as to the principles of law announced in them. The arguments are directed to the results of each decision rather than to the law, and if the difference in the facts in the several cases is noted, the difference in the results is understandable.

A principle of law that runs through all the cases is that, in an action of this kind where defendant carries public liability insurance, the plaintiff has the right, within certain limitations, to interrogate prospective jurors on their *voir dire* as to their interest and relationship to insurance companies that carry such insurance.

The purpose for which the questions are permitted to be asked is not different from the purpose which permits an inquiry of a prospective juror as to his association, acquaintanceship and relationship to the parties to the action, his present or past business experience and the many other subjects that are frequently developed in the impaneling of a jury. However, the propounding of a question that involves a reference to defendant's insurance is placed on a different basis from most of the other questions. The reason is to protect the defendant against the inclination of jurors to cast the burden of damages, where there is insurance, upon the company whose business it is to insure against such risks. To avoid the possibility of such action on the part of juries, this court has placed certain conditions on which the right to ask the question may be exercised and has directed that the substance of the question shall be restricted to avoid, insofar as possible, the conveying of information to the jury that the defendant has insurance. It may be that under present day conditions of the general use of the automobile and the general practice of automobile owners carrying public liability insurance, the reason for the safe-guarding of such question has lost its force and that the matter is over-emphasized. But since we are dealing with a principle that involves insurance carried by a defendant to protect him against risks arising in various fields of endeavor, we will not, at this time, make any exception to distinguish automobile insurance from other classes of insurance carried for similar purposes.

A principle on which the right to conduct such examination of jurors depends is that the examination must

be made in good faith. That is the holding in each of the cases cited. And in all cases there is the ever recurring inquiry as to whether plaintiff asked the question to determine whether the jurors were, by reason of financial interest in or relationship to an insurance company, so defense-minded as to render them unsuitable for jury service or, on the other hand, as to whether the purpose was to covertly convey to the jury information that an insurance company was standing in the background. If it is for the latter purpose, the effort deserves the severest condemnation.

It is clear there must be good faith shown as to defendant's risk being insured. If defendant has no insurance then any interrogation of jurors that would give them information or create a suspicion in their minds as to defendant being insured would be highly improper. Good faith also extends to the probability of there being jurors who may be called that would be unsuitable to plaintiff for jury service by reason of interest in, connection with, or relationship to, an insurance company. If there is no reasonable probability of any of the jurors who are to be called being connected in some way or interested in the company, then the inquiry should not be made. The facts in the *Kavanaugh case* were of this character and it was held that the question should not have been asked. In the *Edwards case* the only showing was that defendant had insurance and that the insurance company was conducting the defense for the defendant. But it did not appear that there was any probability that any of the jurors to be called were connected with or interested in insurance. There are statements in the opinion of the *Moore case* indicating there was a showing as to the possibility of some of the jurors who had been called being interested in insurance companies whose business it was to insure risks such as were involved in that case, but a factor in that decision was that defendant's counsel had invited or acquiesced with

the procedure that led to the asking of the question and therefore could not make complaint.

The subjects mentioned on which there must be a showing of good faith are not intended to include all that may arise in the impaneling of a jury. The ones stated have been mentioned to demonstrate the necessity of showing that the purpose for asking the question is based on something more than a mere surmise. As a matter of practice it is proper to state at this time that the determination of the question of good faith is for the trial court and unless there has been an abuse of that discretion his conclusion should not be disturbed in a court of review. Another point of practice about which counsel in this case seem to be confused is the manner in which the question of good faith may be presented to the court. The cases indicate that the trial courts and the bar generally accepted the statement in the *Smithers case,* that the filing of an affidavit and a preliminary hearing on the question was commendable, as the announcement of a rule of practice. The showing may be made by affidavit or by testimony of witnesses or a combination of both. To accomplish the purpose of the inquiry, it appears necessary that there be a hearing outside the presence of the jury.

We do not intend by the suggestions made to prescribe a practice that may develop into an interminable hearing as to the interest and occupation of prospective jurors, nor do we intend to adopt any particular form of question or substance to the exclusion of others.

Before this case was called for trial plaintiff filed an affidavit upon which she founded her request to interrogate the jurors on the matter of insurance. She stated on information and belief that the automobile driven by Robert Lee and involved in the accident was owned by defendant, that defendant held a public liability insurance policy on the same issued by the Commercial Casualty Insurance Company, that by the terms of said policy defendant was

insured for damages that might be imposed on account of such collision. She further stated on information and belief that the ·insurance company had employed investigators and investigated the accident, that it had engaged attorneys, including Samuel Levin who appeared as attorney of record· for the defendant, and that the company would otherwise use its facilities and resources in the defense of defendant. She stated on information and belief that the insurance company employed "numerous persons" in its offices at 120 South La Salle Street, Chicago, and had many other persons acting as investigators, agents and brokers for it in Cook county. She stated "that this affiant has reasonable grounds for believing that persons who are interested in said insurance company financially or otherwise may be among the panel of jurors called into the jury box from which the jurors to hear the above case will be selected; that said panel may also include close friends or relatives of persons employed by, connected with, or stockholders of said insurance company; that plaintiff has reasonable cause for fearing that she cannot secure an impartial and disinterested jury to hear and try her case or a fair trial unless her attorneys are permitted to question the prospective jurors on their *voir dire* examination concerning said plaintiff's [jurors'] interest or connection with said company or the persons employed by said company."

Attorney Levin, after examining index cards of the jury commissioners as pertained to the jurors that were to be called in the case, was sworn and testified that defendant had a public liability policy issued by the Commercial Casualty Insurance Company covering the car involved in the accident, that the company's limit of liability was $5,000 and that if any damage should be imposed above such amount the company would not be liable for it. He stated that he appeared as attorney for Rudek to defend him against any excess above the policy limitation. He

did not testify but the facts indicate that he was engaged by the insurance company to assist in the defense so that the company would not have any liability on its policy. He stated there was no stockholder of the Commercial Casualty Insurance Company residing in the State of Illinois and that as far as he was informed and advised there was no one on the jury panel who had been called as a prospective juror in this case that was a stockholder, officer, agent, broker or employee of the company or anyone financially interested in the company or otherwise, and that as far as he was able to ascertain it was his belief that there was no one on the jury panel who knew anyone connected with the stockholders of the company.

The fact that defendant carried insurance was conceded, but to conform with the requirement of good faith it was necessary that there be something shown that would indicate there was a reasonable possibility that one or more of the jurors to be called in the case was interested in or related in some way to the Commercial Casualty Insurance Company. Such proof could not be made by the statement of conclusions, and to say that the company has "numerous persons employed at its office" and that it "has many other persons acting as investigators, agents and brokers in Cook county" is resting the claim on the merest shadow of possibility. The jurors were not named and no facts were stated showing that plaintiff knew who the jurors would be. There were no facts upon which a finding of good faith could be made as to the jurors' connection with the insurance company. In the quoted part of the affidavit it is said affiant has "reasonable grounds for believing" that persons who are interested in the company may be among the panel of jurors called into the jury box. Affiant did not set forth what her reasonable grounds were and without them the court had no way of determining whether she was justified in her belief that persons interested in the insurance company would be called into the jury box.

If plaintiff's affidavit had been sufficient to show good faith for the asking of the question, it is clear that defendant's testimony did not refute it for it is subject to the criticism made as to plaintiff's affidavit.

Defendant contends that under no circumstances could plaintiff be permitted to interrogate the jurors on their *voir dire* as to whether they had any close friends or relatives associated with or financially interested in such a company. It is conceivable that a plaintiff might be able to state facts that would support a *voir dire* interrogation as to the jurors' close friends and relatives, but this, like the other question, must be based on facts showing a reasonable probability that some one or more of the jurors to be called had close friends or relatives connected with an insurance company, and that by reason of such condition the juror might be biased or prejudiced against plaintiff's claim. Defendant should have the opportunity to refute the facts which were given to support such probability. For the reasons indicated, the court erred in permitting plaintiff to ask the questions, and the evidence was such that the cause should have been submitted to the jury without the possibility of prejudice that would be created by such questions.

Defendant contends there was no evidence on which the jury could base a finding that there was wilful and wanton negligence, and contends that under the authority of *Greene* v. *Noonan*, 372 Ill. 286, the question of such negligence should not have been submitted to the jury. Since the cause has to be remanded for a new trial, we will not discuss or comment upon the evidence of the various witnesses. It has been examined and we find that there was no error in submitting such question to the jury.

For the reasons assigned, the judgments of the superior and Appellate courts are reversed and the cause is remanded to the superior court of Cook county for a new trial.

*Reversed and remanded.*

Mr. Justice Wilson, dissenting:

I do not concur in the majority opinion. In *Moore* v. *Edmonds,* 384 Ill. 535, the questions asked the jurors on their *voir dire* examination closely paralleled the questions asked the jurors in the present case. Specific questions regarding the Underwriters at Lloyds of London were propounded, together with general questions concerning the jurors' connection with or financial interest in companies defending personal injury cases. We pointed out that since numerous liability insurance companies are engaged in business in metropolitan centers such as Chicago, the duty devolves upon counsel representing plaintiff in an action for personal injuries to see that persons antagonistic to the payment of claims for personal injuries do not serve as jurors. Among persons having insurance company connections, particular reference was made to the following: (1) shareholders of the company defending the action or of like companies; (2) those engaged as employees of the company or other insurance companies, and (3) friends and relatives of agents or investigators. Accordingly, we held that the plaintiff, Russell S. Moore, enjoyed the right, in good faith, to interrogate jurors on their *voir dire* examination as to their, or their relatives,' possible connection with, or interest in, liability insurance companies, for the purpose of determining the expediency of exercising his right to peremptory challenge to the end of obtaining a jury free from bias and prepudice, "even though such inquiries may develop a suspicion in the minds of the jury that defendant is protected by insurance."

This court did not hold in *Moore* v. *Edmonds* the controlling factor was that defendant's counsel had either invited or acquiesced in the procedure leading to the asking of the challenged question. In the *Moore case,* a specially concurring opinion specifically stated that the basis of the concurrence was that defendant's attorney invited the interrogation of jurors, "now objected to, by suggest-

ing that after they had been generally examined they could be collectively interrogated concerning financial interest, connection or affiliation with the Underwriters at Lloyds. In my opinion the court did not allow interrogation substantially at variance with this suggestion of defendant's counsel, and hence he is in no position to raise the objection that such examination improperly disclosed that an insurance company was involved." The specially concurring opinion recognizes that the ground upon which it is predicated was not the basis of the opinion of the majority of the court. The concurring opinion says, "The majority opinion, however, is not based upon this proposition, * * *. The comment of the court in justifying questions asked in the present case does not base it upon the reasonable construction of the concession made by defendant's counsel, but lays down the general rule that, in addition to showing that a juror is not an interested party, the affidavit of the defendant must also show that no close friends or relatives of the agents or investigators of the insurance company, or former employees of the agency or investigating firm, or the issuer of the policy, or friends or relatives of agents who are engaged in other types of insurance for the same company protecting the defendant must be negatived; otherwise interrogatories may be asked concerning the same."

In *Smithers* v. *Henriquez*, 368 Ill. 588, counsel for plaintiff was permitted to ask whether any juror was interested in a named insurance company defending the action. We pointed out that in order for defendant to obtain a reversal on the ground that the questions asked prospective jurors upon their *voir dire* examination were prejudicial, the examination must have been such as to exhibit a prejudice to the rights of the defendant, observing, "It is to be remembered that plaintiff's right to an impartial disinterested jury is equal to that of the defendant to have an

examination of the jury free from prejudice to his interests." The practical effect of the majority opinion in the present case is to overrule *sub silentio* both *Smithers* v. *Henriquez,* 368 Ill. 588, and *Moore* v. *Edmonds,* 384 Ill. 535.

It is a well-known fact that many large insurance companies maintain offices in Chicago; that these companies employ thousands of persons in Chicago and Cook county, and that many other persons are closely related to the employees. There is ever present, in my opinion, a reasonable possibility that a prospective juror may be connected with one of the many insurance companies doing business in Chicago. The situation which prevails in a metropolitan community is far different from the situation in a rural community. In personal injuries cases, as well as in other cases, tried in counties other than Cook county, the jurors in the great majority of instances are, no doubt, known to the attorneys representing both plaintiff and defendant. Their connections, if any, with insurance companies are matters of common knowledge in their communities. The fact that the inquiries directed to the jurors in the present case and in *Moore* v. *Edmonds* and in *Smithers* v. *Henriquez* would be unnecessary in a relatively small community does not obviate the need for such interrogatories in cases tried in the courts of Cook county.

The distinction made in the opinion of the court in this case between the questions adjudged proper in the *Smithers* and *Moore cases,* but improper here, is a distinction without a substantial difference. The affidavits in each of the three cases were all substantially to the same effect. Indeed, the plaintiff's affidavit in the case at bar is most complete and, as plaintiff well says, "There are no further facts that can be furnished by plaintiff in such an affidavit to show the 'reasonable possibility' required by the court." The questions asked by plaintiff in this case were: (1)

"Have you ever had any interest in or been in any way affiliated with any company that makes a practice of investigating or defending cases of this kind, or do you have any financial interest in such a company as that?" (2) "Do you have any close friends or relatives associated with a company of that kind or financially interested in such a company?" These questions are sufficiently comprehensive to include railroad companies, transit companies, taxicab and bus companies, many of them being self-insured and all of them having cases pending daily in the trial courts of Cook county. The word "insurance" was not mentioned in the questions assailed, nor was any insurance company specifically designated. The questions were, of course, designed to include insurance companies but, at the same time, to prevent, as far as possible, jurors from learning that the defendant was insured against liability and, in the event of an adverse judgment, would not have to satisfy it in whole or in part. In short, the questions were propounded in good faith and clearly meet the requirements with respect to such questions as repeatedly and consistently described by this court. (*Smithers* v. *Henriquez,* 368 Ill. 588; *Edwards* v. *Hill-Thomas Lime & Cement Co.* 378 Ill. 180; *Kavanaugh* v. *Parret,* 379 Ill. 273; *Moore* v. *Edmonds,* 384 Ill. 535.) The mere possibility of prejudice to defendant was remote in the extreme.

No good reason suggests itself for according the special privilege to insurance companies in metropolitan areas granted them by the decision in this case. Insurers are the real parties in interest, as is generally well known, in many personal injuries cases. The protection accorded them here, in my judgment, transcends reasonable bounds.

So long as we employ the jury system, we must accord to the jury some sense of obligation in following the instructions of the court, namely, to treat both parties impartially and without prejudice. The principal opinion in this case assumes that the jury cannot exercise a fair judg-

ment if the fact is suggested that the defendant is insured. The fact is the insurance company is the real party in interest but secures an advantage in the selection of the jury, by reason of the opinion, which it otherwise would not have.

For the reasons assigned, among others, I respectfully dissent from the opinion of the majority of the court.

Mr. Justice Thompson, also dissenting:

I am unable to follow the majority opinion, either in logic or in view of its former holdings. This question is entirely too controversial and presents to the trial court too much difficulty of solution without a rule laid down that, with justice, can consistently be followed. It is apparent the opinion is in conflict with the case of *Moore* v. *Edmonds,* 384 Ill. 535, where a man by the name of Moore, accompanied by his young daughter and two of her friends, was riding on his own toboggan over a slide maintained by the defendant, and Moore sustained serious injuries at a ditch which traversed the runways on said slide. A jury returned a verdict of $12,500 in favor of plaintiff, which was affirmed by the Appellate Court. The cause was appealed to this court and the principal question for decision was the propriety of certain questions asked the jurors on their *voir dire* examination. Prior to the interrogation of the prospective jurors, plaintiff filed an affidavit alleging, on information and belief, that the defendant carried public liability insurance with the Underwriters at Lloyds of London against risks identical with the one charged in the complaint; that the action had been and was being defended by the insurers; that the attorneys of record for defendants were counsel for the insurance company and were representing such company rather than the defendants in the cause; that the insurance company was vitally interested and in the event of a judgment rendered

against defendants, must pay up to the limits of the liability of the policy.

Concluding, plaintiff declared that his interest would be prejudiced unless his counsel would be allowed to inquire of prospective jurors on their *voir dire* examination as to their financial interest, if any, in the said insurance company, for the reason that as affiant was informed and, upon such information, states the facts to be that the insurance company has a number of employees in Cook county and there are others in Cook county financially interested in said company.

Defendants' attorney interposed a motion supported by his affidavit to restrain the interrogation of the jurors requested by plaintiff. It was averred that plaintiff had not shown any financial interest, connection or affiliation of the jurors with the insurance company, and, on the contrary, that none of the jurors could possibly have a financial interest with the insurer.

The trial judge there directed plaintiff's attorney to first ask the jurors about their occupation, pointing out that if the jurors appeared acceptable counsel would then have "a right to ask them as to their friends, relatives and associates with reference to any insurance company." The four jurors on the first panel were asked, collectively: "Have you ever had any connection at all with any company that makes a practice of defending cases of this kind, or do you have any financial interest in such a company as that? Do you have any close friends or relatives associated with a company of that kind?" Upon receiving their negative replies, counsel then asked, "Do any of you have any connection with the Underwriters, Lloyds of London?" Again, the replies were in the negative. The questions were repeated owing to the examination of the jurors in panels.

The affidavit of the defendant there, after setting out in great detail that the company was operating extensively

in Chicago and Cook county through agents, and that it employed investigators and attorneys to protect defendants' insurance policies, concluded with an averment expressing the opinion that plaintiff's affidavit for permission to question the jurors as to their connection with the insurance company was not made in good faith, but that its sole purpose was instead to apprise the jurors of insurance coverage on the accident in controversy.

We held there that the record disclosed good faith in seeking to ask the questions and the painstaking efforts by plaintiff's counsel to interrogate the jurors in a manner eminently fair to the defendant, as well as to his own client; that the procedure pursued by the trial court and plaintiff's counsel reflects a sincere attempt to follow the suggestions of the court in *Smithers* v. *Henriquez,* 368 Ill. 588, and demonstrates that counsel can accomplish the objective of preventing persons interested in the insurance carrier from serving as jurors by adhering to our admonition in the *Smithers case* and in the case of *Edwards v. Hill-Thomas Lime & Cement Co.* 378 Ill. 180, and *Kavanaugh* v. *Parret,* 379 Ill. 273.

It is stated in the majority opinion "but a factor in that decision [the Moore case] was that the defendant's counsel had invited or acquiesced with the procedure that led to the asking of the question and therefore could not make complaint." This, in my judgment, did not control that decision. The decision in the *Moore case,* clearly followed the other decisions of this court, presenting principles of law which, in my judgment, should control in the instant case. From the authorities cited and the reasoning followed in that case, the court decided these questions there, which are similar to the questions in the instant case and did not violate the good faith in interrogating prospective jurors on their *voir dire* examination.

454

An analysis of the affidavits in the *Smithers case,* as well as in the *Moore case,* reveals they are substantially the same. The affidavit in the instant case follows the other cases and all are substantially' the same. In the *Moore case* the defendant requested that before the plaintiff be allowed to interrogate the jurors on their *voir dire* examination, the plaintiff first be ordered to determine whether any of the jurors individually were connected with any company or association, and the kind and nature of the business of said company; that the plaintiff be required to obtain this information before inquiring of the said jurors whether or not they are connected, affiliated or interested in any corporation. This the court did not require and plaintiff was permitted to ask the questions as above pointed out on the showing as made in his affidavit. The majority opinion clearly overrules this holding and imposes an impossible burden in requiring as a condition prerequisite to "good faith" to state facts impossible of ascertainment.

This showing made and the rule laid down in the cases of *Smithers* v. *Henriquez,* 368 Ill. 588, and *Moore* v. *Edmonds,* 384 Ill. 535, should be followed, as they give to the courts and trial lawyers a proper basis for a showing of "good faith." It is impossible, not only in Cook county, but in other counties, to ascertain the facts pertaining to specific jurors which would justify the inquiry under the tests laid down in the present opinion of the court. If the counsel had this knowledge, he could easily challenge the suspected juror. The preliminary affidavits are for the very purpose of disclosing that the insurance company is the party in interest, and with its many investigators, agents and attorneys, this necessitates an examination of prospective jurors as to their connection with the defendant company or its agents or servants. All of this is for the purpose of properly exercising the right of peremptory challenge. As a practical proposition, I say it is impos-

sible for the plaintiff to know, or for anybody to know, who the jurors will be until they step into the box. It is for that reason that it is necessary to make such inquiry as was made in the instant case. To compel this to be done and to set out such facts is obviously contrary to what was said in the *Moore* and *Smithers* cases.

It is apparent that no further or more concrete showing ever can be made by the plaintiff than was made in the instant case or in the cases of *Moore* and *Smithers,* and to require a plaintiff to do what apparently is required in the opinion in the instant case changes and restricts drastically the rule laid down in the former cases and will render it practically impossible to determine a prospective juror's interest in any insurance company without danger of a reversal, all of which, in my judgment, overrules what, in previous cases, we have determined is a plaintiff's right in interrogating prospective jurors after a proper basis by affidavit has been made for that purpose. It is also just as obvious from the above cases that the showing made by preliminary affidavits warranted the questions being propounded to prospective jurors and that these questions as propounded did not violate "good faith." It seems in the instant case this procedure was followed, both as to affidavit and questions propounded. I do not think plaintiff should be punished because she rightfully relied upon the rule of *stare decisis.* In my judgment, the procedure, as followed and approved in the *Moore* and *Smithers cases,* and which was followed and should be approved in the instant case, is reasonable ground on which to stand, in view of the almost universal holding that in personal injury cases the plaintiff may in good faith interrogate the jury on *voir dire* as to their, or their relatives', possible connection with or interest in liability insurance companies. To deny this principal, which is not even denied in other cases, seeks, in my judgment, to afford insurance companies with vast ramifications and connections in every

locality an undue advantage to the real party in interest. I am also inclined to believe defendants in such cases are over-sensitive for fear a breath of suspicion may enter the minds of the jury that the defendant is insured. In this day and age it is common knowledge that most, if not all, automobile owners carry insurance and in the trial of cases the defense is usually conducted by the insurer.

Under my views in this case, I must respectfully dissent.