LORETTA MISHKA DERTZ, Plaintiff-Appellee, *v.* ELEANORA WAGNER PASQUINA et al., Defendants-Appellants.

(No. 55648; ▮▮▮▮▮▮▮▮▮▮

First District (3rd Division)—July 12, 1973.

*Rehearing denied November 20, 1973.*

Baker & McKenzie, of Chicago, (Francis D. Morrissey, Thomas F. Bridgman, and M. K. Murtaugh, of counsel,) for appellants.

James A. Dooley, of Chicago, for appellee.

Mr. JUSTICE SCHWARTZ delivered the opinion of the court:

This is an appeal by Eleanora Pasquina from a judgment upon a verdict assessing damages against her in the amount of $90,000. The trial court directed verdicts against defendant Pasquina, but for her co-defendants, on the issue of liability to the plaintiff. Defendant also urges as error, in addition to the entry of the directed verdicts, the trial court's granting of plaintiff's motion to question prospective jurors on voir dire examination as to their possible connection with two insurance companies, the admission into evidence of an alleged offer of compromise which she made to one of the co-defendants, and the excessiveness of the jury's verdict.

The case arises out of an automobile accident occurring on August 25, 1963, near Butternut, Wisconsin. Plaintiff was a passenger in the front seat of a vehicle owned by co-defendants Stanley and Helen Migon, Jerry and Francis Zavadil, individually and doing business as Cedar Lodge. The vehicle was being driven by defendant Pasquina who, with the plaintiff and two other girls, had come from Chicago to the Cedar Lodge on a brief vacation. During their stay the four girls were offered the use of an automobile owned by the Lodge in order to attend religious services being held nearby. On their way to the services the automobile left the road on a curve and crashed into a deep ditch, seriously injuring the plaintiff.

Plaintiff filed a motion, prior to trial, seeking leave to question prospective jurors on *voir dire* examination concerning their possible interest—financial or otherwise—in two insurance companies. In support of the motion plaintiff attached an affidavit which stated the following in pertinent part:

"Affiant further states that the defendant Eleanora Wagner Pasquina is covered by a policy of insurance written by Security Mutual Casualty Company, 309 West Jackson Boulevard, Chicago, Illinois; that this company has many employees in Cook County, Illinois; that the Security Mutual Casualty Company is an insurance company owned by Swift & Company, 115 West Jackson Boulevard, Chicago, Illinois, and she has been advised it specializes in writing policies of insurance on automobiles of Swift & Company, as well as in reinsurance agreements; that Swift & Company has many hundreds of employees in Cook County, Illinois, and its stock is traded on the New York Stock Exchange, and there are many persons, residents of Cook County, Illinois, who are financially interested in Swift & Company and in Security Mutual Casualty Company which, she is informed, is known to Swift & Company

employees as a wholly owned insurance subsidiary of Swift & Company.

Affiant further states that this action is, according to her information, being defended by each of the said insurance companies; that the attorneys of record for the defendants are local counsel engaged for these insurance companies and are in fact obligated under their contracts to provide a defense for the respective defendants; that these insurance companies are vitally interested in the litigation and would, in the event judgment be rendered against the defendants, pay the judgment up to the limits of the liability of the respective policies.

Affiant further states that in addition to counsel engaged in the actual defense of this case, the said insurance companies employ agents and investigators in and about their several contracts of insurance.

Affiant further states that she believes her interests would be prejudiced unless her counsel be allowed to inquire of prospective jurors on their voir dire as to their financial interest, if any, in the said United States Fire Insurance Company and the said Security Mutual Casualty Company, in that prospective jurors might possibly be financially interested in either of the said companies."

■■ Defendant Pasquina objected to plaintiff's motion on the ground that plaintiff had failed to show factual circumstances indicating a good faith basis for such an interrogation. The trial court allowed plaintiff's motion, and the entire array of prospective jurors were specifically questioned as to any interest they might have in these insurance companies. The right of a plaintiff to interrogate, in good faith, prospective jurors on *voir dire* examination as to their possible connection with an insurance company which may be a hidden, yet real, party in interest in the case, has been long established. (*Smithers v. Henriquez*, 368 Ill. 588.) Under particular circumstancees, such an inquiry may be necessary so that plaintiff may intelligently exercise his right of peremptory challenge and have an opportunity to present his case before an unbiased and disinterested jury. However, the allowance of an interrogation of this kind has always been predicated upon the plaintiff's prior showing that such was necessary to secure a fair trial, thus demonstrating that the inquiry will be made in good faith and not merely for the purpose of creating in the minds of the jurors a suspicion that insurance was involved in the cáse. *Wheeler v. Rudek*, 397 Ill. 438.

In *Wheeler*, an affidavit substantially like the one involved here was held to be insufficient to exhibit the good faith of the plaintiff. The court stated, at page 445;

"The fact that defendant carried insurance was conceded, but to conform with the requirement of good faith it was necessary that there be something shown that would indicate there was a reasonable possibility that one or more of the jurors to be called in the case was interested in or related in some way to the Commercial Casualty Insurance Company. Such proof could not be made by the statement of conclusions, and to say that the company has 'numerous persons employed at its office' and that it 'has many other persons acting as investigators, agents and brokers in Cook county' is resting the claim on the merest shadow of possibility. The jurors were not named and no facts were stated showing that plaintiff knew who the jurors would be. There were no facts upon which a finding of good faith could be made as to the jurors' connection with the insurance company. In the quoted part of the affidavit it is said affiant has 'reasonable grounds for believing' that persons who are interested in the company may be among the panel of jurors called into the jury box. Affiant did not set forth what her reasonable grounds were and without them the court had no way of determining whether she was justified in her belief that persons interested in the insurance company would be called into the jury box."

Plaintiff cites *Haymes v. Catholic Bishop of Chicago,* 41 Ill. 2d 336, in support of her contention that the interrogation of the prospective jurors concerning the insurance companies was not error. The *Haymes* case is distinguishable in that the defendant there objected to the plaintiff's *voir dire* questions concerning an insurance company, but did not object on the ground that there was not a sufficient showing of good faith for such an inquiry. The court held, not that a proper foundation was not necessary, but that the defendant, by not objecting to the lack of foundation, had waived any error in plaintiff's proceeding with the questioning without it. In the case before us, defendant specifically objected to the lack of a proper foundation for the inquiry.

Plaintiff also cites *Moore v. Edmonds,* 384 Ill. 535, in support of the sufficiency of her affidavit to establish a good faith foundation. *Moore* and similar authorities predate *Wheeler v. Rudek, supra,* and while not expressly overruled by that decision, are so inconsistent with it as to be deemed overruled by implication.

■■ Plaintiff's affidavit does not disclose a factual basis which would create a reasonable probability that persons interested in the two insurance companies in question would be called as jurors. The interrogation of potential jurors, in the absence of such a prior showing, was error and

prejudicial to defendant. Since the case must be remanded for a new trial, we shall consider the other errors charged by defendants.

■ ■ Although the trial court applied Wisconsin substantive law to the issues in the case, Illinois law governed the procedural questions, including the standard which is used to determine whether a motion for directed verdict should be rendered. In Illinois, a directed verdict can only be entered when all the evidence, viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (*Pedrick v. Peoria & Eastern R. R. Co.*, 37 Ill. 2d 494.) It is upon this standard that we must review the trial court's directed verdicts for the plaintiff and Pasquina's co-defendants.

The evidence reveals that Eleanora Pasquina was unfamiliar with the area in which the accident occurred; that her driving experience was limited to urban conditions; and that she was not familiar with the operation of standard transmission and manual choke in automobiles. She testified that when she and her companions were given the use of the Cedar Lodge car she was shown how to use the standard transmission and the manual choke, but was not told that the steering wheel in the car had a tendency to shimmy. She further testified that she noticed a shimmy in the steering wheel when the car approached the curve, and that instead of responding to her turning of the wheel the car went straight ahead into a deep ditch.

Helen Migon testified that the road where the accident occurred was very bumpy; that the car shimmied when being driven over 40 miles an hour, that the day before the accident she had used the car to drive the four girls from the bus station to the Lodge, and it had begun to shimmy. She stated that she knew the girls were not familiar with the area, and that she had not given Eleanora Pasquina any other instructions except the operation of the standard transmission and manual choke.

The plaintiff, Loretta Dertz, testified that on the morning of the accident Eleanora Pasquina was having difficulty starting the car loaned to them by the Lodge; that Helen Migon came to the car and gave Pasquina some instructions; and that plaintiff had made no complaint about Pasquina's driving from the time they left the Lodge until the accident occurred. She further testified that the car was being driven at approximately 40 miles an hour; that she was riding in front, but was facing the rear to speak to one of the girls; that she remembers the car entering the curve, but that was the last recollection she had of the accident.

Mary Ellen Wagner Sullivan testified that she was one of the group

in the car driven by Helen Migon the day before the accident; that during the trip to the Lodge she noticed a shimmy in the steering wheel; that Helen Migon stated she had had the car repaired but was not satisfied with it and intended to take it back. She further testified that the speed of the car prior to the accident was approximately 30 miles and hour; that she noticed a shimmy in the steering wheel at one point during the trip; and that at the curve Pasquina tried to turn the car to the left several times, but it did not follow the road, going instead straight ahead into the ditch.

Howard Schultz, a sheriff's department employee, testified that he investigated the accident the morning it occurred; that the weather was clear and road conditions good; and that he measured the car's skid marks at 40 feet up to where the car went into the ditch.

William Wagner testified that several weeks prior to the accident he had done maintenance work on the Cedar Lodge car at his repair shop in Butternut, Wisconsin; that part of the work included balancing the front wheels so they would rotate without causing a vibration in the car; that an imbalance in the wheels could cause a shimmy in the steering mechanism; that this would not be unusual in a 1954 Ford, as the basic design of that car resulted in shimmying in some of them; and that a shimmy in the steering mechanism would not affect the car's brakes or its ability to turn. He further testified that one month after the accident he examined the unrepaired car and found the brakes still operative, but the steering mechanism had been bent in the crash, although all the various parts were still together.

The trial court directed a verdict in favor of the plaintiff on the theory that the evidence conclusively showed that the accident was the sole result of Pasquina's attempt to negotiate the curve at too great a speed, and that the evidence would not support a conclusion that plaintiff had been guilty of contributory negligence. The trial court directed a verdict in favor of Pasquina's co-defendants on the theory that the evidence did not support a conclusion that the condition of the automobile played any part in the accident. The evidence does not support those conclusions.

■■ As to the directed verdict in favor of the plaintiff, Helen Migon testified that the car would shimmy when driven over 40 miles an hour, and that she gave no instructions to Pasquina concerning this shimmy prior to allowing her to use the car. Mary Ellen Wagner Sullivan testified that Helen Migon had stated she was not happy with the repairs that had been made on the car and that she intended to take it back for further work. Both Sullivan and Pasquina testified that the steering mechanism vibrated before the accident, and that Pasquina tried several times to turn the car but it did not respond. On the other hand, William

Wagner testified that such a vibration in the car's steering mechanism would affect neither the brakes nor its ability to turn. The skid marks on the road evidenced that the brakes had been applied at some point. Upon this evidence the question of proximate cause arose as to whether the accident resulted from excessive speed or a defective steering apparatus. The evidence is not so conclusive as to support a ruling that no other verdict than one in favor of the plaintiff and against Pasquina could ever stand.

■■ Concerning the issue of plaintiff's contributory negligence, Mary Ellen Wagner Sullivan testified that during the ride to the Lodge on the day prior to the accident, the girls joked about the car's shimmying and its rattling. The plaintiff testified that before the accident she made no complaints about Pasquina's driving, and that at the time of the accident she was facing the back seat talking with the girls. In *McConville v. State Farm Mutual Auto. Insurance Co.*, 15 Wis.2d 374, the Wisconsin Supreme Court held that a guest's willingness to proceed in the face of known danger would no longer be deemed assumption of risk, but could be considered by a jury as contributory negligence if such constituted an unreasonable exposure to danger. The court also held that a voluntary and unreasonable exposure to danger on the part of a guest could be considered by the jury in applying the Wisconsin comparative negligence statute. In *Vandenack v. Crosby*, 275 Wis. 421, the Wisconsin Supreme Court held that a guest is under a duty to maintain a proper lookout for the purpose of warning the driver of any possible danger which might arise, and stated that whether a guest has fulfilled this duty is almost always a question for the jury. We conclude, however, that the evidence as to the events leading up to the accident shows that the plaintiff was not unreasonably exposing herself to danger in voluntarily riding with Pasquina in the Cedar Lodge car. Nor do we feel that the evidence could support a conclusion that the plaintiff was guilty of contributory negligence in momentarily turning to the rear seat to converse with other passengers. The trial court was correct in its ruling as to this aspect of the case.

■■ Plaintiff argues that the question of the directed verdict entered by the trial court in favor of Pasquina's co-defendants is not properly before this court. She reasons that contribution among joint tort-feasors, although allowed in Wisconsin, will not be applied by an Illinois court, as it is contrary to this State's public policy. Hence, it is argued that having no right to enforce contribution from her co-defendants, Pasquina has no standing to challenge a directed verdict in their favor. In *Millsap v. Central Wisconsin Motor Transportation Co.*, 41 Ill.App.2d 1, the court held that the right of contribution between joint tort-feasors,

if it arises under the substantive law of the state controlling the issues, is not contrary to Illinois public policy and will be allowed. The Wisconsin Supreme Court, in *Bielski v. Schulze*, 16 Wis.2d 1, held that contribution among joint tort-feasors should be proportionate to the percentage of causal negligence, and that the percentage of causal negligence was to be determined by the jury.

■■ In the instant case, therefore, Pasquina has a genuine interest in the resolution of plaintiff's claim against her co-defendants and has standing to appeal the judgment upon the directed verdict in their favor. *Schachtrup v. Hensel*, 295 Ill.App. 303, cited by plaintiff, is distinguishable in that Illinois substantive law which bars such contribution was applied to the issues in that case.

■■ As to the merits of the directed verdict in favor of Pasquina's co-defendants, evidence was adduced showing that the Cedar Lodge car had a vibration in its steering mechanism when driven at or over a certain speed. Helen Migon, a joint owner of the Cedar Lodge, knew of this condition, but gave no warning concerning it prior to allowing Pasquina and the other occupants to use the car. It was also shown that the steering apparatus vibrated before the accident and that the car failed to respond when Pasquina tried to turn on the curve in the road. We conclude that there was sufficient evidence presented to allow the jury to determine what part, if any, the steering mechanism and Migon's failure to warn concerning possible defects in that mechanism, played in the accident.

■■ Pasquina also contends that an offer of compromise which she made to one of her co-defendants was erroneously admitted in evidence over her objection during the trial. Frances Zavadil, a co-defendant, was called as an adverse party by Pasquina, and while on the witness stand was asked by her own attorney if Pasquina had mentioned anything about the accident. She stated that Pasquina had told her she was sorry for what had happened and had offered to pay for the damages. Pasquina objected to the testimony as being outside the scope of recross-examination. Her statement was clearly nothing more than a patent offer of compromise and not, as plaintiff suggests, an admissible admission of liability. It is well established that such attempts at compromise are not admissible in Illinois. (*Prewitt v. Hall*, 113 Ill.App.2d 198.) However, the objection was not that such a statement was an inadmissible offer of compromise, but that such was outside the scope of proper redirect examination. A specific objection waives all other unspecified grounds for objection, and unspecified grounds for objection may not be raised for the first time on review. *Greim v. Sharpe Motor Lines*, 101 Ill.App.2d 142.

In view of our reversal and remandment of this case, we need not consider Pasquina's contention that the verdict of the jury was unreasonable and palpably excessive. The judgment is reversed and the cause remanded for such other and further proceedings as are not inconsistent with the views expressed herein.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.