EDWARD J. STRASMA, Plaintiff-Appellant, v. VIRGINIA A. RAGER, Defendant-Appellee.

Third District   No. 3—85—0518

Opinion filed July 23, 1986.

BARRY, J., specially concurring.

Charles J. Hughes and Steven P. Glancy, both of Lester Berry Smith, Ltd., of Peoria, for appellant.

Mark D. Henss and Duncan B. Cooper III, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The accident occurred on Route 24 on a misty, somewhat foggy morning in November 1981. Route 24 is a straight and level two-lane

road with a posted speed limit of 55 miles per hour. The plaintiff was headed west to Peoria. The plaintiff came to a stop in traffic. The vehicle between the plaintiff's car and the defendant's car was a pickup truck. The pickup truck avoided a collision with the stopped car being driven by the plaintiff by swerving to the right and down an incline into a ditch. The defendant drove her car into the rear of plaintiff's car. The defendant testified that she was traveling at 10 to 15 miles per hour, about one-half to one car length behind the pickup, when it suddenly swerved off the road. The defendant hit her brakes as hard as she could but was unable to stop until after she struck the rear of the plaintiff's car. The defendant pleaded guilty after receiving a ticket for traveling too fast for conditions.

The defendant further testified that the pickup truck blocked her forward vision. When the pickup left the road she followed it off with her eyes. Her vehicle traveled 1 to 1½ car lengths while she was watching the pickup. Then she looked up and saw the plaintiff's car. She testified that she applied her brakes as fast as she could but was unable to stop in time. The defendant testified that she did not attempt to swerve to the right or to the left because the pickup was in the ditch to her right and there was an oncoming lane of traffic to her left.

Jerri Ramey, the driver of the pickup truck, testified that it sits up higher than a car. She observed the defendant's vehicle immediately prior to the time that her vehicle went off the road. She did not feel the defendant's vehicle was following too closely.

The initial question raised in this appeal is whether the trial court erred in failing to grant plaintiff's motions for a directed verdict or judgment *n.o.v.* The standard applied in determining whether or not to grant a directed verdict or a judgment *n.o.v.* is whether all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.

In the present case, the plaintiff maintains that in rear-end-collision cases there is a generally accepted line of precedent for holding the driver of the rear vehicle negligent as a matter of law. In support of his position, plaintiff cites *Glenn v. Mosley* (1976), 39 Ill. App. 3d 172, where the court stated:

> "In rear-end collisions, the question of negligence must be decided on the particular facts of each case, but, generally, a party who collides with a stopped vehicle is guilty of negligence as a matter of law." (39 Ill. App. 3d 172, 176.

The plaintiff also cites *Burroughs v. McGinness* (1978), 63 Ill. App. 3d

664, wherein the court held:

"In light of general experience and common knowledge, the evidence before us reveals that the defendant was not attentive while driving and therefore, negligent. A driver approaching from the rear has the duty to keep a safe lookout and he must take into consideration the fact that he may be required to stop or slow his vehicle suddenly. [Citations.] Furthermore if he does not maintain a proper lookout for traffic ahead he is negligent. [Citation.]" 63 Ill. App. 3d 664, 667.

The plaintiff posits that the application of *Glenn* and *Burroughs* demonstrates that the defendants' conduct violated the principles in these cases and constitutes negligence. See also *Waldron v. Hardwick* (1968), 99 Ill. App. 2d 36; *Apato v. Be Mac Transport Co.* (1972), 7 Ill. App. 3d 1099; *Payne v. Kingsley* (1965), 59 Ill. App. 2d 245.

▌ While we have no dispute with the above cited cases, other cases have held that a rear-end collision does not automatically create an inference as a matter of law that the driver of the rear car was negligent or that he was following too closely or driving too fast for conditions. Rather, it is the responsibility of the trier of fact to determine whether the rear driver, in such accidents, was acting reasonably under the circumstances, or that the accident was unavoidable. (*Burgdorff v. International Business Machines Corp.* (1979), 74 Ill. App. 3d 158, 163.) See also *Kent v. Knox Motor Service, Inc.* (1981), 95 Ill. App. 3d 223; *Thomas v. Northington* (1985), 134 Ill. App. 3d 141.

▌ In the case at bar, there is present a clear question for the jury as to whether the defendant's driving too fast for conditions was the proximate cause of the plaintiff's alleged injuries. The defendant was ticketed for violating section 11—601 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—601). The defendant pleaded guilty to the charge that she failed to decrease her speed in order to safely encounter hazardous weather and highway conditions. However, it does not follow that such a violation presents proof of negligence *per se* or a finding of contributory negligence as a matter of law. "The failure to obey one or more statutory provisions of the Illinois Vehicle Code is only evidence of negligence to be considered by the jury along with all the other attendant circumstances." (*Doris v. Bradley* (1979), 76 Ill. App. 3d 890, 893.) See also *Lerette v. Director General* (1922), 306 Ill. 348.

▌ In *Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, the defendant struck the rear of the plaintiff's car. The defendant, Blue, was issued a traffic ticket for driving too fast for conditions. To this charge he

pleaded guilty and paid a fine. The *Gullberg* opinion held that standing alone, a plea of guilty to the offense of driving too fast for conditions was insufficient to establish that the driver was negligent. (85 Ill. App. 3d 389, 391.) Therefore, whether the defendant's driving too fast for conditions was a proximate cause of the collision was a question for the trier of fact to be considered along with all the other attendant facts and circumstances.

■ The evidence, viewed in a light most favorable to the defendant, shows that the plaintiff, Strasma, came to a stop in traffic. The defendant, who was admittedly driving too fast for conditions, was unable to bring her vehicle to a stop after the pickup truck in front of her suddenly swerved off the road. At that time, the defendant first saw the plaintiff's stationary vehicle. A collision ensued. Whether the defendant was negligent and whether she proximately caused the collision were proper questions of fact for the jury. We cannot say that the inferences which might be reasonably drawn from this evidence so overwhelmingly favors the plaintiff that no contrary verdict could ever stand. Accordingly, plaintiff's motion for a directed verdict and a judgment *n.o.v.* were properly denied.

■ Plaintiff next contends that the trial court erred in not allowing him to question prospective jurors about any interest or connection they may have in an automobile-insurance company. Prior to trial, plaintiff filed a motion for *voir dire.* The plaintiff sought to ask prospective jurors one or both of the following questions:

"1. Do you or any of your close friends or relatives have, or have ever had, any connection at all with any company that makes a practice of defending cases of this kind or do you have any financial interest in such a company?

2. Do you or any of your friends or relatives have any business dealings with State Farm Mutual Automobile Insurance Company?"

In support of his motion, the plaintiff filed an affidavit. *Inter alia* it stated that a defense had been tendered by State Farm Mutual Insurance Company. The affidavit pointed out to the court that State Farm is a mutual company whose world headquarters was located less than 50 miles from the trial site of Pekin. It further stated that State Farm has numerous agents throughout Tazewell County and may have employees residing in the county. It called to the court's attention the fact that Pekin Insurance has corporate offices in Pekin and that it has numerous officers, employees and agents in Tazewell County. The trial court denied the plaintiff's motion.

In *Imparato v. Rooney* (1981), 95 Ill. App. 3d 11, we stated:

"Generally, evidence which informs the jury that the defendant in a personal injury action is insured against liability is inadmissible on grounds of relevancy. [Citation.] The rationale underlying this rule is twofold: (1) the fact that a party is insured can have no possible bearing on the question of his negligence; and (2) knowledge of such insurance on the part of the jury will probably result in a larger verdict than that awarded in the absence of such knowledge. [Citation.] However, the doctrine prohibiting disclosure of insurance is subject to several exceptions.

One of these exceptions permits the plaintiff, within certain limitations, to interrogate prospective jurors on their voir dire as to their interest and relationship to insurance companies." (95 Ill. App. 3d 11, 15.)

The court in *Imparato* then went on to cite *Wheeler v. Rudek* (1947), 397 Ill. 438. In *Wheeler* our supreme court held that the right to conduct such an examination depends upon the good faith of the plaintiff. "If there is no reasonable probability of any of the jurors who are to be called being connected in some way or interested in the company, then the inquiry should not be made." (397 Ill. 438, 442.) As a matter of practice, the determination of the questions of good faith is for the trial court and will not be disturbed absent an abuse of discretion. (397 Ill. 438, 444.) In denying plaintiff's motion the court held that the plaintiff's affidavit did not support his request for *voir dire*. We do not deem this an abuse of discretion.

In *Wheeler*, an affidavit substantially like the one involved here was held insufficient to exhibit the good faith of the plaintiff. In reference to whether the plaintiff's affidavit demonstrated a reasonable possibility that one or more of the jurors to be called in the case was interested in or connected with an insurance company the court stated:

"Such proof could not be made by the statement of conclusions, and to say that the [insurance] company has 'numerous persons employed at its office' and that it 'has many other persons acting as investigators, agents and brokers in [the trial] county' is resting the claim on the merest shadow of possibility." (*Wheeler v. Rudek* (1947), 397 Ill. 438, 445.)

Plaintiff cites *Haymes v. Catholic Bishop* (1968), 41 Ill. 2d 336, and *Moore v. Edmonds* (1943), 384 Ill. 535, in support of his contention that the trial court erred in refusing to allow *voir dire*. For the reasons given in *Dertz v. Pasquina* (1973), 15 Ill. App. 3d 470, 474, *rev'd on other grounds* (1974), 59 Ill. 2d 68, both these cases are distin-

guishable from the case at bar.

■ The trial court inquired into the occupations of the prospective jurors, Although the record is not clear on this point, the trial court apparently also inquired into the occupations of their spouses and children. This procedure was sufficient to reveal those who had employment relationships with insurance companies. The procedure was inadequate to enable counsel to learn whether the jurors had close friends in the insurance business. Nonetheless, as we noted in *Leischner v. Daniel's Restaurant, Inc.* (1977), 54 Ill. App. 3d 568, 573, "[f]ew jurors are without some friend who is in some way connected with the insurance industry." We cannot say that the trial court abused its discretion in this matter. Without some substantiating basis suggested for this inquiry, it would serve no purpose other than to apprise the jurors that the loss was covered by insurance.

■ The remaining question is whether the trial court erred in allowing the following question to be asked of the defendant on direct examination:

"Question: All right, Virginia, assuming the conditions as they existed as you just testified to, do you feel that there is any way that you could have avoided the impact that occurred?

Answer: No, I don't."

An objection to the question and motion to strike by the plaintiff were denied. Plaintiff argues that the above quoted question goes to an ultimate issue in the case. We agree. The question improperly calls for a conclusory answer on an ultimate issue. Closely in point is the recent case of *Freeding-Skokie Roll-Off v. Hamilton* decided by our supreme court (*Freeding-Skokie Roll-Off v. Hamilton* (1985), 108 Ill. 2d 217, 223). Similar questions were there found to be objectionable.

■ In order for a lay witness to be permitted to express an opinion or an ultimate issue, it must be evident that the witness cannot adequately communicate to the jury the facts upon which his opinion is based. The instant case, like *Freeding-Skokie*, involves the comparatively simple question of whether the defendant was negligent. There appears to be no reason why the witness could not adequately communicate to the jury the facts upon which his opinion was based.

■ "Where error is shown to exist, it will compel reversal, unless the record affirmatively shows that the error was not prejudicial." (*Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 517.) Not only does the record in the instant case fail to show that the error in admitting the testimony was not prejudicial, we believe the reverse to be true. The question and response in this case were highly prejudicial.

Accordingly, the judgment of the circuit court of Tazewell County

is reversed.

Reversed and remanded.

STOUDER, J., concurs.

JUSTICE BARRY, specially concurring:
Although I agree with the majority that the judgment in favor of defendant should be reversed and this cause remanded, I do not agree with one of the holdings of the majority. In my view the trial court erred in denying plaintiff's motion for directed verdict and judgment *n.o.v.*

In *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14, the supreme court said:
> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

This is the *"Pedrick rule"* which a reviewing court must use in considering the evidence.

As the majority notes, this court held in *Gullberg v. Blue* (1980), 85 Ill. App. 3d 389, 406 N.E.2d 927, that pleading guilty to a traffic violation is not alone sufficient to establish negligence but rather is one of the facts to be considered by the jury. In *Gullberg v. Blue* we went on to find that a judgment *n.o.v.* was properly entered by the trial court under the *Pedrick* standard, and we said:
> "The jury concluded that the defendant was not negligent; however, such a conclusion cannot stand, for based upon his own testimony the defendant did not apply his brakes until it was too late to bring his own vehicle under control. The evidence fails to disclose any intervening parties, events or factors which would support a finding that the defendant was not the proximate cause of the collision. A driver approaching from the rear has a duty to keep a safe lookout and must take into consideration the fact that he may be required to stop or slow his vehicle suddenly. Failure to maintain a safe lookout for traffic ahead constitutes negligence on the part of a driver." 85 Ill. App. 3d 389, 392, 406 N.E.2d 927, 930.

I think the evidence in the case before us indicates that defendant *was* the proximate cause of the collision. She was familiar with the highway and with the congested traffic conditions which were usual

along this route. She was traveling within one-half to one car length behind a high truck which she could not see around. She suddenly came upon plaintiff's stopped car in front of her and was unable to stop in time to avoid hitting that car. Obviously when she regulated her speed and her distance from the truck she was following, she did not take into account her limited forward visibility and the fact that she might be required to stop suddenly. When the pickup truck swerved, defendant diverted her attention from the road ahead and watched the truck go into the ditch. In spite of the extra distance between her car and plaintiff's, by the time defendant saw plaintiff, she could not prevent a collision.

The circumstances of this case are similar to those in *Burroughs v. McGinness* where a rear-end collision occurred when the defendant was distracted by traffic to his left so that he did not see the plaintiff's slow-moving car until he was too close to avoid striking it. The plaintiff had slowed down because the car in front of him was turning. The appellate court in *Burroughs* reversed the judgment for defendant and said:

"The evidence, even when viewed in its aspect most favorable to the defendant, clearly established defendant's negligence by his failure to be alert as to the traffic preceding him." *Burroughs v. McGinness* (1978), 63 Ill. App. 3d 664, 669, 380 N.E.2d 37, 40.

In *Glenn v. Mosley* a directed verdict in favor of defendant was reversed on appeal, with the reviewing court stating:

"A motorist who does not maintain a proper lookout for traffic ahead is negligent.

*** A driver approaching from the rear has the duty to keep a safe lookout to avoid colliding with the vehicle ahead and he must take into account the prospect of having to stop his car suddenly." *Glenn v. Mosely* (1976), 39 Ill. App. 3d 172, 176, 350 N.E.2d 219, 222.

On the basis of the law as stated in these cases, the factual situation in this case seems a compelling one for entry of a directed verdict or judgment *n.o.v.* in favor of plaintiff. I would reverse the judgment and remand with directions to enter judgment in favor of plaintiff and to have a new trial on the issue of damages.