# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Rettig v. Heiser*, 2013 IL App (4th) 120985

---

| | |
|---|---|
| Appellate Court Caption | COLLEEN K. RETTIG, Plaintiff-Appellant, v. RICKY P. HEISER, Defendant-Appellee, and DIANE M. MOORE, Defendant. |
| District & No. | Fourth District<br>Docket No. 4-12-0985 |
| Filed | October 4, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an unusual rear-end collision on an interstate highway that occurred when plaintiff swerved to the left shoulder of the highway to avoid colliding with a motorist who was attempting to merge onto the highway and was struck from the rear by defendant, who was behind plaintiff and also swerved to avoid the merging motorist, summary judgment was properly entered for defendant, since no genuine issue of material fact existed as to whether defendant breached a duty of care to plaintiff and plaintiff could not establish that element of her claim, especially when defendant was driving within the speed limit, other vehicles were on the highway, it was drizzling, and the accident happened in an instant. |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 11-L-178; the Hon. Michael Q. Jones, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Daniel P. Cusack and Thomas M. Watson (argued), both of Cusack, Gilfillan & O'Day, LLC, of Peoria, for appellant.

James E. Long (argued), of Chapin & Long, of Champaign, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1        In September 2011, plaintiff, Colleen K. Rettig, filed a complaint alleging negligence against defendants, Ricky P. Heiser and Diane M. Moore, following a vehicular collision between Heiser and Rettig. Moore is not a party in this appeal. Heiser, in July 2012, moved for summary judgment, alleging the facts show his conduct, in avoiding a head-on collision with Moore, was not the proximate cause of Rettig's injuries. The trial court agreed with Heiser and granted his motion. Rettig appeals, arguing summary judgment was improper because (1) in a rear-end collision, the question of whether the rear driver is negligent is a question of fact for a jury to determine; (2) Heiser failed to cite authority in his summary-judgment motion; (3) the emergency-doctrine defense was not pleaded as an affirmative defense or raised until Heiser's reply brief on summary judgment; and (4) no authority supports Heiser's position. We affirm.

¶ 2                                  I. BACKGROUND
¶ 3        On October 22, 2009, Heiser, trying to avoid Moore's vehicle, drove his car into the rear of Rettig's vehicle. The collision occurred near the intersection of westbound Interstate 74 (I-74) and Interstate 57 (I-57).

¶ 4                                  A. The Complaint
¶ 5        In September 2011, Rettig filed a two-count complaint against Moore and Heiser. In the complaint, Rettig alleged in count I, at approximately 3:41 p.m. on October 22, 2009, she was driving west on I-74 near the intersection with I-57. Heiser also was driving westbound on I-74 near the I-57 intersection. While Rettig and Heiser approached the intersection, Moore was attempting to merge onto westbound I-74 from I-57. Moore lost control of her vehicle and crossed both lanes of traffic on westbound I-74. Heiser took evasive action to avoid Moore's vehicle and collided with the rear of Rettig's vehicle. In count II, Rettig alleged Heiser was negligent in that he (1) drove at a speed greater than what was reasonable

given the traffic conditions; (2) failed to decrease his speed or stop to avoid colliding with Rettig's vehicle, which he should have seen; (3) failed to apply the brakes on his vehicle or turn to avoid Rettig's slowing or stopped vehicle; and (4) followed Rettig's vehicle more closely than was reasonable and prudent. Rettig alleged Heiser proximately caused her personal injuries, which include severe and permanent injuries to her neck and back.

¶ 6                                    B. Rettig's Deposition

¶ 7        According to Rettig, on October 22, 2009, she was driving home after work in a minivan from Carle Foundation Hospital to Mahomet. The weather "was drizzly." There was no snow, but the roads were wet. Rettig did not notice any "slickness or icy spots." There was a lot of traffic.

¶ 8        As she drove past the Prospect Avenue exit, she was in the right lane. Approximately one-half mile after the Prospect Avenue exit, Rettig moved into the left lane because the "57 interchange area is always busy with people coming up and going down." There was traffic in front of her, behind her, and to her side. Rettig noticed Moore's vehicle coming up from the ramp and saw Moore lose control. Moore's vehicle began spinning and stopped in front of Rettig. Rettig believed the car spun around 2 1/2 times. The front of Moore's vehicle faced Rettig's. Rettig hit her brakes and swerved to the left shoulder to avoid Moore. Rettig did not strike Moore's vehicle, missing it by inches. Rettig estimated she was driving 55 miles per hour as she approached the I-57 exit. Rettig believed the speed limit was 65 miles per hour.

¶ 9        According to Rettig, she first saw Moore's vehicle when it was at the top of the ramp. Moore had not yet entered the right lane on I-74. Rettig could not recall having seen anyone behind her until that point. Rettig testified Moore's vehicle, when Moore lost control, was six to eight car lengths in front of her. When Moore's car turned, facing eastward toward Rettig, three car lengths separated the vehicles. Moore's car then continued moving eastward. Rettig did not see a semitruck (semi) when she saw Moore lose control of her vehicle.

¶ 10       Rettig initially noticed Heiser's vehicle, a pickup truck, after she swerved to avoid Moore. Rettig looked in her rearview mirror and saw Heiser's truck five to six car lengths from hers. Heiser's truck "was coming fast." She knew she "was going to get hit." When Heiser struck Rettig's vehicle, Rettig was driving 35 miles per hour, as she was still in the process of braking. Both vehicles were partly on the shoulder and partly on the road.

¶ 11       Rettig averred the collision occurred "at the pretty beginning of the bridge around the guardrail." She did not believe she was on the bridge over I-57 when the vehicles collided. After Heiser struck Rettig's vehicle, her vehicle propelled forward approximately 15 car lengths. Her vehicle stopped "[b]eyond the bridge." She moved her car to the shoulder.

¶ 12       Rettig described the damage to her vehicle. Her bumper hung from Heiser's bumper. Rettig's whole back end was pushed in and her windshield was gone. Rettig agreed the collision was "kind of a bang, bang, split[-]second decision." Rettig, when asked if it was her intention to stop completely on the shoulder, stated, "I didn't have time to think that far." Rettig did not know the traffic situation in the right lane.

¶ 13                               C. Heiser's Deposition

¶ 14       Heiser testified he worked as a licensed grain inspector in Champaign. On October 22, 2009, at approximately 3:40 p.m., he was driving to his home in McLean. That day, he entered westbound I-74 from Neil Street. Heiser drove immediately to the left lane. He did so because "the traffic was thinner," as vehicles were exiting to and entering from the Prospect Avenue exit. Heiser believed "there was a semi or two right there." It was raining and the pavement was wet.

¶ 15       According to Heiser, the following occurred:

> "A. And there was a semi on my right, and I was in the left lane, and I was about halfway up on the side of the semi and all of a sudden, next thing I knew, semi swerved hard[.] [R]ight in front of me was headlights, car coming back my way, and I looked at that and I looked in front of me and there was a vehicle in front of me and I said well. And there was nowhere to go. Concrete wall. I was on the bridge part of it.

> * * *

> A. There's a concrete wall this side (indicating) and a person in front of me there and the person's headlights there, so I decided I better not hit somebody head-on and I just–I whipped it to the left and that's when I hit the car."

¶ 16       Heiser testified he did not see the car facing him until after the semi "took a hard right." Heiser was "right alongside the semi," so he could not see Moore's vehicle. Heiser stated he was driving 55 or 60 miles per hour at the time. He observed several cars while he was driving, but he could not specify whether he saw Rettig's vehicle until immediately before the collision. Heiser first recalled seeing Rettig's vehicle, which "more or less stopped," after he swerved to miss the head-on collision.

¶ 17       Heiser averred, when he first saw Rettig's vehicle, he could not recall how far the vehicle was from his but decided he "would say at least two car lengths" separated them. Heiser then testified he was going 55 miles per hour.

¶ 18       According to Heiser, when he saw Moore's vehicle's headlights, he swerved and "tromped on [his] brakes." His truck slid. Rettig's vehicle "[w]asn't moving hardly at all." Heiser said she "[a]lmost stopped," and, if she "would have been going a little faster[–]she was past the car headed back the other way[–]I wouldn't have hit her." Heiser believed Rettig was driving five miles per hour. Heiser opined from the moment he saw Moore's vehicle until he hit Rettig's vehicle took "probably 10 or 15 seconds." Heiser had no idea how long it took for him to pass Moore's vehicle and then to hit Rettig's.

¶ 19       Heiser averred he had been driving alongside the semi for a while. When he saw Moore's vehicle heading toward him, he hit his brakes and then swerved.

¶ 20                              D. Moore's Deposition

¶ 21       Moore testified she was driving northbound on I-57 and attempting to merge onto I-74 when she lost control of her vehicle. Her husband was also in the vehicle. As Moore approached the end of the on-ramp, she noticed a semi in the right lane. Moore believed she needed to accelerate so she would be going the speed limit of the interstate when she merged

in front of the semi. When she skid, Moore's vehicle did "a 180" to her left. Moore ended up facing east in the "passing lane." As Rettig's vehicle approached, Moore's vehicle was "still kind of spinning a little bit." Moore's vehicle ended up partially in the passing lane and partially in the driving lane. Moore first saw Rettig's vehicle as "[s]he was coming at me and very close." Moore believed the vehicles were going to collide. Moore could not say whether she saw Rettig's vehicle go to the left.

¶ 22    Moore saw Heiser's vehicle after Rettig passed. When she saw Heiser's truck, her vehicle "was more straight." She believed it felt longer than two seconds for both cars to go past her, but "it was fast."

¶ 23                               E. Motion for Summary Judgment

¶ 24    In July 2012, Heiser filed a motion for summary judgment. Heiser argued the facts failed to show he was the legal cause of Rettig's injuries. Heiser argued the facts showed he was driving the speed limit when he was placed in an untenable position of having to swerve to avoid a head-on collision. Heiser contends, at best, his conduct was a condition and not the proximate cause of Rettig's injuries.

¶ 25                               F. Trial Court's Findings

¶ 26    In September 2012, the trial court granted Heiser's summary-judgment motion upon finding the following:

    "The close inspection of the depositions shows that defendant Heiser was in the middle of an accident. I can discern nothing that suggests there's a triable issue that he was negligent in any way.

    The argument of the plaintiff basically boils down to, he's in the middle of an accident so maybe he had something to do with it, and let a jury determine whether he had something to do with it. Well, for the jury to be able to do that, I must be presented with something at this point that allows for the reasonable inference that defendant Heiser breached his duty. And, as I said, a close review of the depositions reveals nothing other than he was in the middle of an accident. Who knows, maybe he had something to do with it but there is nothing that I can put my finger on that suggests there's a possibility that Mr. Heiser was negligent.

    Mr. Heiser essentially was in the process of passing a semi. There's nothing negligent about that. And all of a sudden, the semi is swerving to the right and here comes defendant Moore's vehicle right in front of his and Mr. Heiser tried to save his life."

¶ 27    This appeal followed.

¶ 28                                   II. ANALYSIS
¶ 29                               A. Standard of Review

¶ 30    Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In ruling on a summary-judgment motion, a court "must draw all reasonable inferences in favor of the nonmoving party." *DeMambro v. City of Springfield*, 2013 IL App (4th) 120957, ¶ 11, 990 N.E.2d 1255. Because summary judgment is a drastic means to dispose of litigation, it should be given only when "the movant's right to judgment is clear and free from doubt." *Id.* (quoting *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601, 912 N.E.2d 771, 779 (2009)). We review a summary judgment order *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992).

¶ 31                    B. The Propriety of the Summary-Judgment Order

¶ 32    Rettig contends summary judgment should not have been awarded because case after case has established the question of whether a rear driver involved in a rear-end collision is negligent is one for a jury or other fact finder and not a question of law for the court. Rettig cites a number of cases that conclude a "rear-end collision does not automatically create an inference as a matter of law that the driver of the rear car was negligent or that he was following too closely or driving too fast for conditions," and it is the trier of fact's responsibility "to determine whether the rear driver, in such accidents, was acting reasonably under the circumstances, or that the accident was unavoidable." *Burgdorff v. International Business Machines Corp.*, 74 Ill. App. 3d 158, 163, 392 N.E.2d 183, 186 (1979); see also *Kapsouris v. Rivera*, 319 Ill. App. 3d 844, 854, 747 N.E.2d 427, 435 (2001) ("In a rear-end collision automobile accident case, it is the responsibility of the trier of fact to determine whether the rear driver was acting reasonably under the circumstances or that the accident was unavoidable."); *Abrams v. City of Mattoon*, 148 Ill. App. 3d 657, 664, 499 N.E.2d 147, 152 (1986); *Strasma v. Rager*, 145 Ill. App. 3d 826, 829, 495 N.E.2d 1343, 1344 (1986). Rettig contends if the law in Illinois is that a plaintiff in a rear-end collision is not entitled to judgment as a matter of law regarding liability, then the rear driver is not entitled to such a judgment.

¶ 33    The question of whether a driver is negligent is, in general, one for a jury or other fact finder. See *Kleiss v. Bozdech*, 349 Ill. App. 3d 336, 353, 811 N.E.2d 330, 343 (2004). However, there must be a question for the jury to decide. Under section 2-1005(c) of the Code of Civil Procedure (735 ILCS 5/2-1005(c) (West 2010)), summary judgment may be granted on claims where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." There is no exception provided in section 2-1005(c) for negligence claims. 735 ILCS 5/2-1005(c) (West 2010). Rettig has cited no case law to support a finding a negligence case involving a rear-end collision cannot be resolved on summary judgment, when no evidence exists to support a finding of negligence.

¶ 34    A rear driver is not precluded from prevailing on a summary judgment motion simply because courts have held a plaintiff in a rear-end collision may not be entitled to judgment as a matter of law regarding liability. The language in the cases relied upon by Rettig states " '[a] rear-end collision does not *automatically* create an inference.' " (Emphasis added.) *Abrams*, 148 Ill. App. 3d at 664, 499 N.E.2d at 152 (quoting *Burgdorff*, 74 Ill. App. 3d at 163, 392 N.E.2d at 186). Such language was added to address decisions of other courts, such

as *Glenn v. Mosley*, 39 Ill. App. 3d 172, 176, 350 N.E.2d 219, 222 (1976), that held one "who collides with a stopped vehicle is guilty of negligence as a matter of law." *Abrams*, 148 Ill. App. 3d at 664, 499 N.E.2d at 152. The language does not foreclose summary judgment under section 2-1005(c) for either a plaintiff or a defendant when the requirements of that section are met.

¶ 35    The issue is whether summary judgment was proper in this case. For Rettig to prevail on her negligence claim against Heiser, the record must contain facts establishing Heiser owed a duty to Rettig, breached that duty, and, as a result, was the proximate cause of Rettig's injuries. See *Ford v. Round Barn True Value, Inc.*, 377 Ill. App. 3d 1109, 1113, 883 N.E.2d 20, 24 (2007). In her complaint, Rettig alleges Heiser owed her the duty "to exercise reasonable care and caution so as not to injure" her. Rettig alleges Heiser breached that duty by the following:

"(a) driving his vehicle at a speed greater than was reasonable and proper, having regard to traffic conditions and the use of the highway, in violation of 625 ILCS 5/11-601[(a) (West 2010)];

(b) failing to decrease the speed of his vehicle as necessary to avoid colliding with Plaintiff's vehicle, in violation of 625 ILCS 5/11-601[(a) (West 2010)];

(c) failing to apply the brakes on his vehicle to reduce its speed, or turn said vehicle, when he saw or should have seen Plaintiff's slowing and/or stopped vehicle;

(d) failing to keep his vehicle under proper control;

(e) failing to keep proper lookout ahead for slowing or stopped traffic;

(f) failing to see and observe that Plaintiff's vehicle was slowing and/or stopped;

(g) failing to stop his vehicle in time to avoid the collision, although he saw or should have seen that it was impending and had ample time and opportunity to avoid it;

(h) following Plaintiff's vehicle more closely that was reasonable and prudent and not having due regard for the speed of the vehicles and the traffic upon and the condition of the highway, in violation of 625 ILCS 5/11-710[(a) (West 2010)]."

¶ 36    Heiser argued he was entitled to summary judgment on another ground, *i.e.*, the evidence failed to show "proximate cause." The trial court awarded summary judgment based on the failure of the evidence to show a genuine issue of material fact as to whether Heiser breached a duty of care, *i.e.*, acted negligently. The court determined "there is nothing that I can put my finger on that suggests there's a possibility that Mr. Heiser was negligent."

¶ 37    The depositions and pleadings reveal no genuine issue as to any material fact Heiser breached the alleged duty of care he owed to Rettig. The facts are essentially undisputed and no testimony shows or permits the reasonable inference Heiser followed Rettig too closely, was driving too fast or too fast for conditions, had sufficient time to stop upon passing the oncoming or stopped vehicle, or was otherwise not acting with due care. The testimony establishes Heiser was driving on the interstate within the speed limit at 3:40 p.m., it was drizzling, and a number of other vehicles were on the road. As Heiser drove, a car appeared before him and, in an instant, he had to decide how to proceed. He slammed on his brakes and swerved away from the lane where the semi had been to avoid a head-on collision. He

struck Rettig, who had just avoided the same car and who was proceeding slowly or stopped on the left shoulder. This evidence shows an accident occurred. Any conclusion Heiser acted negligently or was at fault would be purely speculative–not based on any fact of record. It is the responsibility of plaintiff to develop and present a record from which negligence can be discerned. The depositions simply do not provide a basis for anything other than speculation as to negligence.

¶ 38    Heiser is entitled to a judgment as a matter of law. Because no genuine issue of material fact exists as to whether Heiser breached a duty of care to Rettig and there are no means by which Rettig can establish this element of her negligence claim, she cannot establish Heiser is liable for negligence.

¶ 39    The trial court properly granted summary judgment.

¶ 40    We further address Rettig's statements "it is unusual, as is the case here, that the rear driver in a rear-end accident is seeking a judgment as a matter of law" and she "was unable to find a single case in which an appellate court determined that the rear driver in a rear-end accident was entitled to summary judgment as a matter of law." This is not the typical rear-end collision case where both cars are traveling in the same lane when the front car stops, while the rear car does not. See, *e.g.*, *Kapsouris*, 319 Ill. App. 3d at 854, 747 N.E.2d at 435; *Abrams*, 148 Ill. App. 3d at 664, 499 N.E.2d at 151-52. In typical cases, negligence can be more easily inferred because Illinois law mandates a driver must decrease his or her speed as necessary to avoid colliding with other vehicles "in compliance with legal requirements and the duty of all persons to use due care." 625 ILCS 5/11-601(a) (West 2010). Here, the accident occurred after both plaintiff and Heiser swerved to avoid an accident and the testimony establishes Heiser and Rettig were "at least two car lengths" to "five to six car lengths" apart when they first saw each other after both swerved to avoid Moore. Given the unusual circumstances of this case, it is not surprising neither Rettig nor Heiser cited a case directly on point.

¶ 41    Rettig's cases are distinguishable. Some reveal typical rear-end-collision scenarios that would have supported either a finding of negligence or the absence of negligence. For example, the *Kapsouris* plaintiff was injured in a rear-end collision and the facts, as viewed in a light most favorable to the nonmovant on a motion for judgment *n.o.v.*, established the "defendant was driving 20 miles per hour, at night and in the rain, when the vehicle carrying plaintiff suddenly stopped in front of her without signaling" and defendant applied her brakes and slid into the stopped vehicle. See *Kapsouris*, 319 Ill. App. 3d at 854, 747 N.E.2d at 435. In *Abrams*, the front vehicle stopped at a stop sign, began pulling forward, and then stopped again, at which time it was struck by the rear vehicle. *Abrams*, 148 Ill. App. 3d at 664, 499 N.E.2d at 151-52. Other cases involved third vehicles, like here, but contained questions for the jury on proximate cause. See, *e.g.*, *Strasma*, 145 Ill. App. 3d at 829, 495 N.E.2d at 1345 (finding "a clear question for the jury as to whether the defendant's driving too fast for conditions was the proximate cause of the plaintiff's alleged injuries"); *Burgdorff*, 74 Ill. App. 3d at 163, 392 N.E.2d at 186.

¶ 42    Rettig next argues Heiser failed to cite authority in his motion for summary judgment and also raised the issue of the emergency doctrine for the first time in his reply brief on the

summary-judgment motion. These arguments fail. Rettig cites no authority to show these alleged procedural errors in the trial court foreclose summary judgment. In addition, the issue of the emergency defense is irrelevant, as Rettig had insufficient evidence to establish her *prima facie* case.

¶ 43                                   III. CONCLUSION

¶ 44          We affirm the trial court's judgment.

¶ 45          Affirmed.